LEONARD v. KENDALL et al.　(No. 7639.)

(Court of Civil Appeals of Texas. Dallas. Dec. 2, 1916. Rehearing Denied Jan. 6, 1917.)

1. APPEAL AND ERROR ⬤⇒179(3) — ASSIGNMENTS OF ERROR—DIRECTIONS OF VERDICT.

A peremptory instruction for plaintiff, where the defenses were limitations and fraud, serves as basis for assignments of error raising those issues.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1137; Dec. Dig. ⬤⇒179(3).]

2. CONTRACTS ⬤⇒313(2) — ANTICIPATORY BREACH—ADOPTION OF RENUNCIATION.

There is not an anticipatory breach of contract by one of the parties renouncing it before time for performance, but only on the other party adopting such renunciation and treating the contract as at an end except for purpose of action for damages.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1279; Dec. Dig. ⬤⇒313(2).]

3. CONTRACTS ⬤⇒313(2) — ANTICIPATORY BREACH—RENUNCIATION.

For the person holding a deed for delivery to state to the vendee, before the time for performance, that under instructions from the vendor he refused to deliver, is not such an unconditional declaration as to amount to a renunciation of the contract, and so serve as a basis for an anticipatory breach.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1279; Dec. Dig. ⬤⇒313(2).]

4. CONTRACTS ⬤⇒171(2)—ENTIRE OR SEVERABLE.

Defendant's contract to convey land to K., and on completion of the sale to pay plaintiff a commission for it, is divisible.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 756; Dec. Dig. ⬤⇒171(2).]

5. BROKERS ⬤⇒63(1)—RIGHT TO COMMISSIONS —CONTRACT.

Under contract of defendant to convey land to K. and on completion of sale to pay plaintiffs a commission for negotiating it, right to commission is not necessarily dependent on a conveyance; a broker being entitled to commissions if he secured a customer ready, able, and willing to purchase on the authorized terms, which cannot be defeated by refusal of the principal to convey or by failure of his title.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 79, 81, 94–96; Dec. Dig. ⬤⇒ 63(1).]

6. BROKERS ⬤⇒63(1)—CONTRACT FOR COMMISSIONS — ANTICIPATORY BREACH — RENUNCIATION.

As regards anticipatory breach of vendor's contract to pay brokers their commission contained in contract to convey land to the purchaser, it is not a renunciation thereof for the vendor to refuse to convey to the purchaser.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 79, 81, 94–96; Dec. Dig. ⬤⇒ 63(1).]

7. BROKERS ⬤⇒63(1) — CONTRACT — ANTICIPATORY BREACH—ACCEPTANCE OF RENUNCIATION.

Any renunciation by vendor of contract to convey is not accepted, so as to result in an anticipatory breach, entitling broker to sue vendor for commissions which were payable when conveyance was made, by purchaser bringing suit for specific performance.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 79, 81, 94–96; Dec. Dig. ⬤⇒ 63(1).]

8. LIMITATION OF ACTIONS ⬤⇒46(7)—ACCRUAL —ANTICIPATORY BREACH OF CONTRACT.

There never having been acceptance of any renunciation by vendor of contract to convey and pay commissions, limitations do not, on the theory of anticipatory breach, commence to run against action for commissions till time fixed in contract for payment.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 246; Dec. Dig. ⬤⇒ 46(7).]

9. BROKERS ⬤⇒86(7) — ACTION FOR COMMISSIONS—FRAUD—EVIDENCE.

Mere statement of vendor that the property was worth more than the contract price is insufficient for submission of the defense to action for commissions of fraud of the broker in inducing her to sell at less than its value.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116, 117; Dec. Dig. ⬤⇒86(7).]

Appeal from District Court, Dallas County; Kenneth Force, Judge.

Action by J. S. Kendall, Jr., and others against Mrs. M. L. Leonard. Judgment for plaintiffs, and defendant appeals. Affirmed.

W. H. Atwell, of Dallas, for appellant. Dabney & Townsend, of Dallas, for appellees.

RASBURY, J. Appellees in the court below sued appellant for $2,500, alleged to be due appellees for services rendered appellant in the sale of certain real estate. Appellant's defense, necessary to detail, was that the action was barred by the four-year statute of limitation, and that appellees were not entitled to recover because of fraud, in that the appellee Kendall, in whom she reposed confidence, deceived her into believing that her property was of the value of $100,000, while in truth its value was $150,000, thereby enabling said Kendall to buy same himself while pretending to represent another and also collect for his said firm a commission. There was trial, and at conclusion of the evidence the court directed peremptory verdict for appellees, which was returned; and upon which judgment was rendered accordingly for said sum, with accrued interest. From such order this appeal is taken.

The substance of the facts essential to a disposition of the appeal are these: On November 12, 1909, appellant owned an improved lot in the city of Dallas. On that day appellant and appellee J. S. Kendall, Jr., agreed in writing that appellant would sell and said appellee would purchase the property described for $100,000, of which sum $1,000 was paid when the contract was executed. The sale was for part cash and part on credit, the cash payment to be $25,000, and the contract set out in detail the amount of cash and the notes to be given in evidence of the unpaid part and how same was to be secured. The contract also contained recitations with reference to the title and what the abstract delineating same should disclose, and provided that deeds, etc., consum-

mating the sale should be executed within 30 days, except that in event the abstract to be furnished by appellant should fail to disclose good title appellant was entitled to an additional 30 days in which to perfect same, failing in which the contract was to be void and the $1,000 paid by appellee Kendall to be repaid him. The contract was executed in duplicate, one copy being retained by Kendall and the other by appellant, the $1,000 being delivered to J. W. Thompson, appellant's attorney. The contract also provided that upon completion of the sale appellant would pay Hann & Kendall $2,500 commissions for their services in negotiating the sale. On the day of the execution of the contract Kendall transferred same to S. W. King, Jr., in consideration of $1,000; Kendall acknowledging receipt of the money and King accepting the transfer by written addenda upon the contract. On the following day, or November 13, 1909, appellant and S. W. King, Jr., to whom appellee Kendall had transferred the contract, addressed and jointly signed a letter to American Exchange National Bank, inclosing a deed from appellant to King for the lot which we have described, also check for $24,000, the balance on the agreed cash payment, six notes representing the deferred payments and a deed of trust, all in conformity with the preliminary contract, all being properly signed and acknowledged and accompanied by the explanation that it was agreed between appellant and King that the bank should hold all in escrow under the provisions of the preliminary contract with Kendall until examination and approval of the title, at which time the deed was to be delivered to King, $24,000 and the notes and deed of trust to appellant, and the other provisions of the contract assigned to King to be observed. Upon the letter was an addenda signed by appellant directing the bank to pay Hann & Kendall $2,500 commissions out of the cash deposited with it upon the consummation of the transaction. By successive agreements, taking the form of joint letters addressed to the bank signed by appellant and King and transmitted to the bank through the agency of Hann & Kendall, it was agreed that appellant should have 30 days from January 12, 1910, or until February 12, 1910, in which to perfect her title to the property so sold. The bank assumed the obligation contained in the several agreements. Mr. H. H. Smith, assistant cashier of the American National Exchange Bank, had charge of the transactions we have detailed for the bank. He testified that appellant, subsequent to the transactions we have detailed, notified the bank not to deliver the deed, etc. Also that King and his attorney on February 2, 1910, demanded possession of the deed, which was refused, and that he had then been notified by appellant not to deliver them, and that while his memory for dates was poor he fixed February 2, 1910, as the day King called by the date of a letter from the bank's attorney whom it had consulted concerning the duty of the bank, although he says the date could have been as late as February 9, 1910. However, it does appear from other evidence that King sued appellant for specific performance of the contract to convey on February 3, 1910. After the termination of the suit for specific performance (Leonard v. King et al., 164 S. W. 1110), which sustained King's right to a conveyance of the property, the witness Smith, who in the meanwhile had been in said proceeding appointed receiver of the property, delivered the deed to King and the money, notes, and deed of trust to appellant. He did not pay Hann & Kendall the $2,500 commissions. It appears from the testimony of Townsend, who was King's attorney, that when he and King called upon Smith for the papers he did inform them that appellant had instructed him not to deliver same, but that Smith did not advise them that appellant intended to repudiate her agreement to convey. Townsend also testified that his purpose in filing suit on February 3, 1910, was to have it pending when the contract expired on February 12, 1910. The instant suit was commenced February 9, 1914.

Appellant testified that appellee Kendall made her successive offers for her property, beginning with an initial offer of $50,000 and ending with a final offer of $100,000 which she accepted, after conferring with her attorney, J. W. Thompson, and being advised by him to do so, and thereafter signed the contract which we have detailed. She further testified when it was proposed to make the contract of sale run in favor of Kendall she inquired why and the explanation was made that the purchaser King was out of town and that it could in no event make any difference to her as long as she received the $100,000. She acquiesced and the contract was signed. She also testified that she would not have signed the contract or agreed to pay Hann & Kendall $2,500 commission had she known she was selling to Kendall, as she believed all the time that the sale was to be to King. No evidence, however, was introduced relating to the actual value of the property at the time it was sold. Appellant's testimony as to when she refused to "go ahead," as she puts it, with the contract was substantially the same as that of the witness Smith.

[1] Appellant's brief presents six assignments of error accompanied by various propositions. To any consideration of the assignments appellee objects on the ground that each fails to comply with the rules. There are in the final analysis of the case but two issues presented by the record, one being whether the right to recover the commissions agreed to be paid appellee was barred by the four-year statute of limitation, the other whether the case should have been

submitted to the jury on the issue of fraud in procuring appellant to sell her property for an amount less than its value. We think the action of the court in peremptorily instructing verdict for appellee could serve as a basis for raising both issues, and that there is among the assignments those which present those issues with reasonable certainty under the rules. We accordingly overrule the objections.

[2] We then come to a discussion of the first question. Appellees' cause of action was for debt and clearly one "evidenced by or founded upon" a contract in writing, and hence was not barred until four years after the cause of action had accrued. Article 5688, Vernon's Sayles' Civ. Stats. As disclosed by the facts we have recited the contract for the sale of appellant's land was to be performed on February 12, 1910, at least each party could await that day for performance, and neither could enforce an earlier involuntary performance. As a consequence appellees could maintain a suit thereon for their commissions at any time within four years thereafter or until February 12, 1914. Appellant, in effect, concedes the rule to be as we have stated it, but asserts that appellant renounced the contract to convey the land on February 2, 1910, at which time appellees' cause of action for commissions accrued and the statute was set in motion. The rule invoked is a well-settled one and is controlling in cases where applicable. The inquiry then is: What is the rule of renunciation in such cases, and what application has it in this proceeding in view of the facts related? The contract being an executory one, and the time for performance not having arrived, when it is claimed appellant renounced the contract, the precise issue presented is that of an anticipatory breach thereof as distinguished from one during performance or one when performance was due. The controlling American rule in such cases is said to be the English rule, which is:

"That a renunciation of a contract, or, in other words, a total refusal to perform it by one party before the time for performance arrives, does not, by itself, amount to a breach of contract, but may be so acted upon and adopted by the other party as a rescission of the contract as to give an immediate right of action. When one party assumes to renounce the contract, that is, by anticipation refuses to perform it, he thereby, so far as he is concerned, declares his intention then and there to rescind the contract. Such a renunciation does not of course amount to a rescission of the contract, because one party to a contract cannot by himself rescind it. * * * The other party may adopt such renunciation of the contract by so acting upon it as in effect to declare that he, too, treats the contract as at an end, except for the purpose of bringing an action upon it for the damages sustained by him in consequence of such renunciation." Elliott, Contracts, vol. 3, §§ 2027, 2028.

The rule is similarly declared in 9 Cyc. 635, 636, 637, as well as in 6 R. C. L. §§ 384, 385. It is also the rule in this state. Kilgore v. Northwest Texas Baptist Educational Ass'n, 90 Tex. 139, 37 S. W. 598. In the case cited it was said, in effect, that the unconditional declaration by one party that he would abandon a contract yet to be performed was not a breach of it, but only afforded the other party the opportunity of electing to accept such renunciation.

[3] The rule being then as we have stated it, what facts are disclosed by the record in this case that makes the rule applicable? The facts are that Smith, who was the custodian of and held in escrow the deed, notes, and deed of trust executed by appellant and King, respectively, advised King and his attorney on February 2, 1910, that, acting under instructions from appellant, he refused to deliver such instruments. We think such refusal far short of the unconditional declaration held by our Supreme Court to be necessary in such cases, particularly so when it is considered that the time for performance had not arrived, which was the earliest moment when King had the right to demand the instruments held by Smith.

[4-6] But conceding that the refusal to deliver the several instruments to King and his attorney in order that they might, as between themselves, close the matters, was in effect a renunciation, there is in the record a total absence of evidence tending to show that appellees elected to accept or act upon such renunciation, so far as relates to their cause of action. From the time of the execution of the contract to convey by appellant and King, wherein appellant agreed to pay appellees' commissions, no act or declaration by appellees is shown upon which a holding can be based that appellees elected to abide by or act upon the renunciation. Complete silence has been maintained by appellees on that issue since the refusal to deliver the deeds, etc. But it is further contended that King did, on February 3, 1910, elect to accept the renunciation made by appellant, and that his election set the date of the accrual of appellees' cause of action. We believe the contention untenable and without support in the rule invoked. The contract was to convey the property to King and to pay appellees' commissions for securing a customer, who would accept same upon the terms therein recited, and was hence a divisible contract. Elliott, Contracts, vol. 2, § 1543. By the contract appellees' right to commissions was not necessarily dependent upon a conveyance by appellant to King, since by the rule in such cases, which is projected as matter of law into such contracts, the broker is entitled to his commissions whenever he secures a customer ready, able, and willing to purchase upon the authorized terms, which cannot at least be defeated by the refusal of his principal to convey or the failure of his principal's title. Accordingly a refusal by appellant to convey to King cannot be said to be a direct or implied renunciation of her contract to pay appellees' com-

missions, since such declaration is insufficient to support such holding in reference to an independent provision and obligation thereof.

[7] Further, there never was in law on the part of King an acceptance of the renunciation by appellant. As we have seen from the rule stated the renunciation by appellant, if it was a renunciation, did not ipso facto breach the contract. To effect a breach it was necessary for King to have acted upon or accepted appellant's renunciation. The form of acceptance in this proceeding would ordinarily have been a suit for the damages sustained by him as a consequence of the renunciation. This King did not do. On the contrary, he proceeded in affirmance of the contract by suit for specific performance, which it would be wholly illogical to construe into an election to breach the contract. The most that can be made of the fact that King commenced his suit before the time of performance is that it was prematurely brought, which fact is of no controlling importance in this case. The explanation of King's attorney is that he sued when he did in order that the suit might be pending when the contract expired. It has been said in connection with such explanation that:

"The promisee has an inchoate right to the performance of the bargain, which becomes complete when the time for performance has arrived. In the meantime he has a right to have the contract kept open as a subsisting and effective contract. Its unimpaired and unimpeached efficacy may be essential to his interests." 9 Cyc. 636.

It may be that it was for the purpose of keeping open and preserving unimpaired the efficacy of his rights under the contract to convey that induced King to sue, even though prematurely. Such a holding is sustained by the testimony of his attorney, and is more in consonance with law than it would be to hold that a suit in affirmance of the contract was in fact one in renunciation thereof.

[8] It thus results that there was never at any time an acceptance by either appellees or King of appellant's breach of the contract, and that the contract itself controls in reference to when the cause of action accrued, which by our statutes was February 12, 1910, and, this suit having been commenced before the expiration of four years thereafter, it was not barred.

[9] On the issue that appellee Kendall deceived appellant as to who was purchasing the property and as to the value of same and induced her to sell it for less than its value, we can only say that the issue is without support, even in her own testimony. By her admissions she knew that the contract to convey was with Kendall for the benefit of another, and that she was to pay him a commission for his services. On the day after signing the contract with Kendall she executed deed to King, the one she supposed was to purchase the property. She says in her testimony that the property was worth more than $100,000, but fails to give her own opinion as to its value. Notwithstanding that evidence as to the real value of the property was obviously obtainable from other sources she failed to introduce it. So that such issue is totally lacking any support from the evidence and the issue as a consequence is not raised in this court.

For the reasons stated and because the record fails to disclose reversible error, the judgment is affirmed.