### SHAEFFER et al. v. SMYTH et al.
#### No. 2343.

Court of Civil Appeals of Texas. El Paso.
April 21, 1932.

Rehearing Denied May 12, 1932.

852

See, also, 22 S.W.(2d) 1088; 37 S.W.(2d) 1012.

Jas. F. Gray, R. W. Gray, and Goggans & Allison, all of Dallas, for plaintiffs in error.

L. L. Gambill and Goree, Odell & Allen, all of Fort Worth, and R. A. Ritchie and Dabney, Goggans & Ritchie, all of Dallas, for defendants in error.

HIGGINS, J.

The Ward-Harrison Mortgage Company being desirous of selling mortgage notes to the Pan American Life Insurance Company, said parties, on February 2, 1920, entered into a contract in which the mortgage company is designated as first party and the insurance company as second party.

The portions of the contract material here are as follows:

"Now, therefore, in consideration of the premises and the sum of one dollar in hand paid, the receipt of which is hereby fully acknowledged said first party has agreed to and does hereby make to second party as a basis of said purchases and sales the following guarantees, to-wit: * * *

"3. That the real estate securing such notes or bonds shall be and is substantially as represented in the report of said first party and worth at least double the amount of the notes or bonds in each case.

"4. That the first party will look after the payment of taxes on such real estate each and every year as long as said notes or bonds are outstanding and held by such second party.

"5. That said first party will collect interest and principal and remit to said second party at maturity by New York or New Orleans check.

"6. That should there be default for six months after maturity thereof in the payment of either interest or principal on any of said notes or bonds, said first party will re-purchase from said second party such notes or bonds so in default, paying said second party in cash with interest to date of such repurchase, or by the substitution of other notes or bonds acceptable to said second party both as to security and rate of interest."

"7. (Unimportant.)

"8. That said second party shall have twelve months from the date of purchase of any notes or bonds in which to inspect the real estate securing such notes or bonds, and in the event the inspector of second party should not value the real estate at double the amount of loan, then said first party will repurchase upon request of second party such notes or bonds either by the payment of cash and accrued interest or by the substitution of other notes or bonds acceptable to said second party."

On February 16, 1920, the insurance company acquired from the mortgage company a note of Alexander Wisely and wife in the

principal sum of $8,000, due January 1, 1930, bearing 6½ per cent. interest from date as evidenced by ten coupon notes for $520 each, one maturing January 1st of each year.

The principal note contained the usual 10 per cent. attorney fees and accelerating maturity clauses. It was provided that the principal and coupon notes should bear 10 per cent. interest from maturity. The notes were secured by deed of trust on 151½ acres of land in Lamar county.

The coupon note due January 1, 1925, was not paid at maturity. The insurance company declared the principal note due. At the instance of the insurance company, the trustee named in the deed of trust resigned, and such company appointed Chas. C. Shaeffer as substitute trustee, who advertised the property for sale on the first Tuesday in July, 1925. On that date the property was struck off to Carl C. Weichsel for $8,100. Weichsel failed to make good his bid, and the trustee readvertised the property and sold same on August 4, 1925, to the insurance company upon its bid of $2,500. Thereafter this suit was filed by the insurance company and Shaeffer against the mortgage company, Weichsel, and J. C. Smyth.

The suit is based upon the contract of February 2, 1920, and, as we construe the petition, it is primarily an action by the insurance company for damages against the mortgage company based upon alleged breach of the covenant to repurchase the note contained in the sixth section of the contract.

The theory upon which defendants Weichsel and Smyth were joined will be later indicated.

The case was tried without a jury, resulting in judgment for defendants.

The petition alleged that on January 1, 1925, Wisely and wife defaulted in the payment of the $520 annual interest and the insurance company thereupon declared both principal and interest due; that subsequently said company notified the mortgage company, and requested it to repurchase the principal note and coupon notes and on March ———, 1925, sent a statement of the amount due, and requested repurchase in accordance with the contract, which the mortgage company refused to do, "and refused to observe any of the provisions and guarantees of the above mentioned contracts."

While the petition alleges an election to declare the principal note due immediately upon default in the payment of the coupon note on January 1, 1925, the evidence does not so show. It would appear from the correspondence that such election was not definitely made until about March 21, 1925, when Gleason, the treasurer of the insurance company, wrote the mortgage company demanding repurchase and submitting a statement of the amount due as follows:

| | |
|---|---|
| Principal ........................ | $8,000.00 |
| Interest ......................... | 520.00 |
| Interest at 6% on $8,000.00 to Mar. 25th, ......................... | 122.77 |
| Interest at 8% on delinquent interest of $520 ..................... | 9.80 |
| | |
| Total, ....................... | $8,652.57 |

Upon refusal to repurchase, the insurance company proceeded to institute foreclosure proceedings under the power of sale conferred by the deed of trust. To that end its representations procured the resignation of the original trustee and appointed Shaeffer as his substitute. Shaeffer on May 27, advertised the land for sale on July 7, 1925. Upon that date it was struck off to Weichsel, who failed to make his bid good. The property was then readvertised for sale and sold to the insurance company on August 4, 1925, upon its bid of $2,500.

■ It will be observed that under the repurchase covenant the mortgage company was under no obligation to repurchase until six months after the maturity of the interest note, which became due on January 1, 1925, and the mortgage company was within its rights in declining to repurchase when requested so to do in March. No demand to repurchase was alleged or proven after the expiration of this six-month period.

In this connection plaintiffs in error assert there was an anticipatory breach of the contract. In the first place, there is no pleading raising such an issue. Nor is there any evidence of an anticipatory breach. As evidence of such a breach, plaintiffs in error rely upon a letter of March 24, 1925, in reply to above-mentioned letter of March 21st. It is unnecessary to quote the letter. It was by no means a positive and unconditional repudiation of the covenant to repurchase, and for this reason did not show an anticipatory breach. Kilgore v. Northwest, etc., Ass'n, 90 Tex. 139, 37 S. W. 598; Provident, etc., Soc. v. Ellinger (Tex. Civ. App.) 164 S. W. 1024; Leonard v. Kendall (Tex. Civ. App.) 190 S. W. 786.

■ The mortgage company was under no obligation to repurchase until July 1, 1925. It had covenanted to repurchase the note on that date, provided the coupon note maturing January 1, 1925 had not been paid. It was necessarily implied that the insurance company during the six-month period would do nothing to change the status of the principal note and the security. But, according to its pleading, it matured the principal note immediately upon the maturity of the coupon note. And the evidence shows an election to mature about March 21, 1925. It was thus in the attitude of demanding the repurchase of a note past due, rendered so by its own act. In our opinion, it had no right to demand such repurchase under such circum-

stances. When the coupon note was dishonored, the insurance company could do one of two things. It could declare the principal note due and foreclose its lien as it did do; or it could maintain the status quo of the note and security and on July 1, 1925, call upon the mortgage company to repurchase if the coupon note still remained unpaid.

In this connection plaintiffs in error assert that the mortgage company is estopped to raise the question discussed. There is evidence of such an estoppel, but estoppel is not pleaded, and it is an elementary rule of pleading that estoppel in pais must be pleaded. It need not be pleaded eo nomine, but the facts showing an estoppel must be set up and the pleadings of plaintiff in error do not suggest the issue.

Again the covenant to repurchase was not such an obligation as dispensed with the necessity of request or demand for performance after July 1, 1925. No such demand is alleged or proven. In the absence thereof, no breach of the contract to repurchase is shown.

For these reasons, the plaintiffs in error show no right of recovery.

But there is another cogent reason why the judgment was properly rendered against them. Findings of fact not having been filed, it must be assumed the court below found all controverted issues of fact in such manner as will sustain the judgment rendered.

The measure of damages for civil injury is such amount as will compensate the injured person for his actual injury. Upon breach of contract, compensation is allowed only for the loss actually sustained. See cases cited 5 Michie, Digest, 903.

The testimony of one of the witnesses is that in July and August, 1925, the reasonable market value of the land covered by the deed of trust was $60 to $75 per acre; that its value upon an absolutely cash basis was $60 an acre. The cash value of the land acquired by the insurance company on August 4, 1925, at the foreclosure sale was thus $9,090, according to this testimony, and it must be assumed the court so found.

Mathematical calculation discloses that at the date of sale in August there was due upon the note about $8,964. This calculation is based on the assumption, as indicated by the evidence, that the principal note was declared due on March 21, 1925. It therefore, to that date, bore interest at the rate of 6½ per cent. per annum and 10 per cent. thereafter. The coupon note bore interest at the rate of 10 per cent. per annum from January 1, 1925, to August 4th, following. To the above amount there should be added as damages $109.47, delinquent taxes paid by the insurance company, making a total of $9,073.47, damages sustained by the insurance company through the alleged breach of the covenant to repurchase. This sum is slightly less than the actual cash market value of the land at the time the insurance company acquired it, and the company therefore sustained no injury by such breach. The insurance company claims as damages 10 per cent. of the amount of the note, but no such damage was proven; there being no evidence of any attorney's fees paid or liability therefor incurred in attempting to collect the note.

It is also contended by plaintiffs in error, in a supplemental brief, that the mortgage company is liable as for breach of the third covenant of the contract, to the effect that the real estate securing the note should be worth at least double the amount of the note. The manifest intent of the contract was that the land would be worth double the amount of the loan at the time of the acquisition of the note by the insurance company, and the evidence shows it was. It did not mean that the land should always be worth that much. Furthermore, the third section of the contract is to be construed in connection with the eighth section, and the evidence shows that, subsequent to the acquisition of the Wisely note, a representative of the insurance company inspected the land, reported it to be worth double the amount of the note and the loan a satisfactory one.

Alternative allegations were made seeking to recover of the mortgage company, Smyth, and Weichsel damages in the sum of $5,600, that being the difference between the bid of Weichsel at the sale in July and which he failed to make good and the sum for which the land sold at the August sale. It was alleged Weichsel made his bid of $8,100 as the agent of the mortgage company and Smyth.

The contract to purchase was evidenced by Weichsel's bid and the trustee's acceptance thereof. The contract was not in writing, and was therefore within the statute of frauds and unenforceable. Article 3995, R. S.; Dawson v. Miller's Adm'r, 20 Tex. 172, 70 Am. Dec. 380; Rugely v. Moore, 23 Tex. Civ. App. 10, 54 S. W. 379.

There is no evidence that would take the case out of the statute upon equitable grounds. If there was any evidence of that nature, it would be unavailing, because there is no pleading to support it.

Affirmed.