BOST v. McCREA.   (No. 674.) †

(Court of Civil Appeals of Texas. Amarillo. Nov. 28, 1914. Rehearing Denied Jan. 9, 1915.)

1. LANDLORD AND TENANT (§ 331*)—RENTING ON SHARES—RE-ENTRY BY LANDLORD.

Where a landlord orders a tenant of premises rented on shares to vacate before the end of his term, and the tenant does so, the lease is terminated; but the tenant's right to recover for the wrongful breach by the landlord is not thereby defeated.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1360–1362, 1379–1387; Dec. Dig. § 331.*]

2. LANDLORD AND TENANT (§ 329*)—RENTING ON SHARES—RE-ENTRY BY LANDLORD.

The fact that a tenant on shares vacated the premises upon receiving a written notice from the landlord, stating that he considered that the tenant had violated his contract and notifying him to leave the farm, was not an admission by the tenant that he had violated the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1364–1366; Dec. Dig. § 329.*]

3. LANDLORD AND TENANT (§ 331*)—RENTING ON SHARES—BREACH BY LANDLORD—SUFFICIENCY OF EVIDENCE—DAMAGES.

In an action by a tenant, who rented on shares as much of a tract of 500 acres of land as he could use, to recover damages for his eviction from the premises three years before the expiration of his term, evidence *held* sufficient to support a verdict for $1,500.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1360–1362, 1379–1387; Dec. Dig. § 331.*]

4. TRIAL (§ 252*)—REQUESTED INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

In an action by a tenant on shares for damages caused by his eviction from the premises, a requested charge, that if the jury found that the tenant could by ordinary diligence on his part have procured a similar lease, which would have produced equal crops, he could not recover for those years, was properly refused, where there was no evidence that the tenant could have procured another lease for as much land, or one giving him the use of a team and tools equal to those he had the use of under his lease.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

5. LANDLORD AND TENANT (§ 331*)—RENTING ON SHARES—RE-ENTRY BY LANDLORD—BURDEN OF PROOF—MINIMIZING DAMAGES.

The burden was on the landlord to show that the tenant could have procured such a lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1360–1362, 1379–1387; Dec. Dig. § 331.*]

6. TRIAL (§ 260*)—REQUESTED INSTRUCTIONS—REPETITION OF CHARGE GIVEN.

Even if a requested charge that a tenant on shares, evicted by the landlord during the term, could not recover for the eviction if, by reasonable diligence, he could have found a similar lease, was proper under the evidence, it was covered by the charge of the court that it was the duty of the tenant to exercise ordinary care to lease other premises or seek other employment to minimize the damages, and that the jury should deduct from the amount the tenant would have received under the lease any amount that he had earned, or by the use of ordinary care could have earned, during that time.

[Ed. Note.—For other cases, see Trial. Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

7. LANDLORD AND TENANT (§ 331*)—RENTING ON SHARES—RE-ENTRY BY LANDLORD—DAMAGES.

Where a landlord wrongfully evicted a tenant from land which he had rented on shares, the measure of damages was the market value of the crops which the tenant in reasonable probability would have grown on the premises during the remainder of the term, less the expenses, other than the labor of the tenant, incurred in raising the crops, and less such sums as the tenant did earn, or by the exercise of ordinary care could have earned, during the time after the eviction.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1360–1362, 1379–1387; Dec. Dig. § 331.*]

Appeal from District Court, Carson County; F. P. Greever, Judge.

Action by J. A. McCrea against John Q. Bost. Judgment for plaintiff, and defendant appeals. Affirmed.

Cooper & Merrill, of Houston, and Lumpkin & Harrington, of Amarillo, for appellant. Lloyd Fletcher, Jno. W. Veale, and W. A. Davidson, all of Amarillo, for appellee.

HUFF, J. The appellee, McCrea, brought suit against the appellant, Bost, on a rental contract, and alleged a breach of the contract by the appellant. He alleged substantially that the terms of the contract were that appellant would lease to appellee certain lands for three years, with an option of a five-year term, and was to furnish teams, tools, implements, and feed, and that appellee was to do the work on the land and receive one-half of the crop.

[1] The appellant denied the allegation, and alleged a breach of the contract by the appellee, and that appellee left the place without any fault on the part of appellant. This we think will be a sufficient statement of the pleadings at this time. Appellant's first assignment is to the effect that the court erred in refusing to instruct a verdict

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

172 S.W.—36        † Writ of error pending in Supreme Court.

for appellant. The proposition under this assignment is:

"Where a tenant for years under a written contract was ordered to vacate by the landlord, and chose to do so, it amounted to a termination of the lease contract."

The appellant requested the following special instruction:

"You are instructed in this case to return a verdict for the defendant, for the reason that the evidence shows, if any contract was ever made and entered into between the plaintiff and the defendant, then the same was mutually terminated and abandoned by each of the parties thereto."

The suit is based upon an original and supplemental contract. The original contract was executed between J. Q. Bost, appellant, and J. A. McCrea, November 17, 1910. The original contract is to the effect that Bost leased to McCrea for a period of three years—or five years, in case he (McCrea) wanted it at the expiration of three years—any number of acres of land from 160 to 500, if McCrea cared to break it. The tenant was to pay one-half of all grain raised on the land leased, and to place the grain belonging to Bost in his crib or stack. On the 11th day of April, 1911, a supplemental contract was executed. It recited that Bost by the original contract had agreed to furnish land and four horses or mules, feed for the horses, and plows, to McCrea during the term of said contract; that a dispute arose between the parties in regard to the manner and character of handling the horses. McCrea, therefore, agreed to take care of the horses furnished by Bost in a good and reasonable manner, and not overwork and not use the horses for any other work, except work upon the place and in going after and bringing to the place things necessary to be used thereon. McCrea further agreed to cultivate the land in a good and "workmanlike" manner and in due season, and that he would not in any way interfere with Bost in the possession of the remaining portion of the place. Bost agreed not to interfere with the possession of the land leased to McCrea under the terms of the original contract, and would not interfere with the horses and other personal property in possession of McCrea so long as McCrea held and used the property as above set out. The recited consideration for the supplemental contract was to settle a dispute between the parties. It appears from the evidence that previous to executing the supplemental contract the appellant and appellee had a difficulty, but settled it by the supplemental contract, and that appellee went back to work on the land. The appellee testified:

"After Mr. Bost and I had entered into this supplemental contract that has been read here, I went back there and went to work. I broke about 18 or 20 acres of grass meadow. I stayed on the place until he ordered me off. It was probably about 10 days after the contract was made that he ordered me off. There was not anything that took place between Mr. Bost and I at that time. He just came up and handed me a letter. He refused to furnish me feed, and I went down and bought feed, and he forbid me feeding that. I fed it, and he came down the next day and said, 'I forbid you feeding any more of that feed to the mules;' and I said, 'Give me a reason; the mules cannot live on the grass;' and I said, 'What will you do, if I don't stop?' And he said, 'God damn you, I will kill you.'"

About a week after that appellant handed appellee the following letter:

"At Home, April 27, 1911.

"Mr. A. J. McCrea, At Home—Dear Sir: This is notice to you that I consider that you have violated your contract with me, and is notice for you to quit working my teams and to leave the farm.

"Yours truly,          John Q. Bost."

The appellee further testified:

"After I had had the conversation with him about the feed, and he delivered this notice to me, I walked off. I left. Up to this time I had been working on the farm there under my contract."

The appellant testified that appellee did not properly take care of the mules furnished him, and that he improperly fed them, and a day or so before the notice appellee left the mules for one or two days without water in the lot, or without any one to look after them, and, further, that the land was not properly broken, and that he considered the appellee himself had broken the contract by not taking proper care of the teams and not plowing in a farmerlike manner. He introduced other evidence to show that the land had not been properly plowed. The appellee denied these statements of appellant with reference to improperly breaking the land and improper care of the teams. From the briefs of the parties hereto this appears to be the substance of the evidence upon the breach alleged.

"Where one party assumes to renounce the contract—that is, by anticipation, refuses to perform it—he thereby, so far as he is concerned, declares his intention then and there to rescind the contract. Such a renunciation does not, of course, amount to a rescission of the contract, because one party to a contract cannot by himself rescind it; but by wrongfully making such a renunciation of the contract he entitles the other party, if he pleases, to agree to the contract being put an end to, subject to the retention by him of his right to bring an action in respect to such wrongful rescission. The other party may adopt such renunciation of the contract by so acting upon it as, in effect, to declare that he, too, treats the contract as at an end, except for the purpose of bringing an action upon it for the damages sustained by him in consequence of such renunciation." Greenwall v. Markowitz, 97 Tex. 479, 79 S. W. 1069, 65 L. R. A. 302; Cornelius v. Harris, 163 S. W. 349.

"The intention to abandon the contract at some future date, is not a breach of it; but, when that intention is declared in positive terms and unconditionally, it has the effect, in so far as the promisor is able to do so, to repudiate the contract itself, and to terminate the contractual relations between the parties. This affords to the other party the opportunity to accept the declarations, if he chooses to do so, and thus make effective the declarations of intention not to perform, rendering the contract thereby one that is broken on the part of the promisor himself." Kilgore v. North Texas Baptist, etc., 90 Tex. 139, 37 S. W. 598; 9 Cyc. 635 (3a), 724.

The appellant cites the case of Davidson v. Harris, 154 S. W. 689, and takes the following excerpt from the opinion, where Judge Reese says:

"If appellee was, in fact, ordered to vacate the leased premises, and chose to do so, this amounted to a termination of the lease."

But the sentence is not completed in the quotation. It continues:

"And entitled appellee to a cancellation of his notes. Whatever rights either party would have would have been by way of damages for breach of the lease contract."

That was a suit for the cancellation of separate notes for each month's rent during the term of the lease. We think that case, when properly understood, is in consonance with the rule by the Supreme Court above quoted by us. In the Greenwall Case, supra, it is further said:

"The necessary consequence of both parties treating the contract as terminated by the renunciation of September 10th, as averred in the petition, was to prevent the accrual of any specific interest plaintiff might, by a different course, have acquired and preserved in the lease, the business to be conducted under it, and the proceeds of the sale of the same. * * * Upon such a repudiation of an executory agreement by one party, the other may make his choice between the two courses open to him, but can neither confuse them together nor take both. It would seem to follow necessarily that the cause of action which plaintiff set up in his pleading entitled him, if sustained by the evidence, to recover * * * for the loss which he sustained from the breach alleged, which was the profit he would have made from the business."

In this case the contention of appellant is that, because McCrea left the place, it terminated the lease. This may be admitted. In Preston v. Smallwood, 20 N. Y. Supp. 504,[1] cited by appellant, the court there held the tenant, because he abandoned the premises, could not recover his interest in the crop. So in the Greenwall Case, supra, our Supreme Court held that the necessary consequence in accepting the renunciation precluded the plaintiff from recovering any specific interest he might have acquired in the lease and would have had a different course, etc., but that did not preclude him from suing for damages for a breach of the contract alleged and a recovery therefor, which was held to be the profits he would have made from the business.

[2] It was argued before us that when appellant gave appellee the notice, and when appellee acted upon it, he thereby admitted he had broken the contract and abandoned it. The notice was: "I consider that you have violated your contract." It is not a charge direct that appellee had broken the contract, but it was only a notice of what the appellant "considered." The preceding acts and words of appellant doubtless had theretofore raised a suspicion in the mind of appellee that appellant so considered. When he left he did not do so because he had violated the

contract, but because appellant considered he had, and had so absolutely convinced himself that he further stated in the letter: "And is notice for you to quit working my teams and leave the farm." Without the team to work, and without being permitted to stay on the farm, it would occur to us it would have been difficult to farm the place; at least, he could not do so under the agreement. We think it is clear that a breach was proven by appellee, and if the jury accepted his testimony he established that part of his allegation. If the jury had accepted the appellant's evidence, they would have found that he was correct in reaching the conclusion that appellee broke the contract. This issue the trial court very clearly presented to the jury for their determination. This assignment is overruled.

[3] The second assignment is to the effect that the verdict and judgment is excessive and has no basis in the testimony; that as shown therefrom the plaintiff suffered no damages, except for the year 1911, which could not have exceeded $500; that for the year 1912 plaintiff produced a crop greater and of more value than he could have produced under the leased premises; that for the year 1913 he could have procured the premises occupied by him for the year 1912. The jury had testimony before them from which they could find that the land leased was of a better quality than any appellee leased thereafter, or could have leased in that neighborhood; that, owing to its peculiar nature, it was considered as being better drouth-resisting than the other land obtained by the appellee. The contract entitled him to as much land as he desired, from 160 to 500 acres. The jury had testimony from which they could have found that for the year 1911, the year appellee left the place, he would have put in cultivation 265 acres; that he would have produced for that year the average crop, which would have been one ton per acre, and that its market value was $10 per ton, or $2,650, and that his costs in the making, harvesting, marketing, etc., for that year, would not have exceeded $50, and that he used diligence to procure employment elsewhere, after having left the place, and succeeded in making during the year only $75; and that the net amount which he would have obtained for his one-half of the crop would have been $1,250. For the year 1912 appellee rented from a Mr. Weatherly 185 acres, and made that year on that place $1,000. The contract with Weatherly was to furnish terms, implements, etc. He could not get any more land from Weatherly that year. There is testimony, if the contract had not been breached, he would have planted and cultivated the 500 acres on appellee's land under the lease, and there is some evidence that his profits over what he made on the Weatherly land would have been $1,400. For the year 1913 he got all the land he could break from

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 65 Hun, 624.

another party, of which he was only able to break 50 acres of sod. The crop that year on sod was a total failure in that neighborhood, but on old land some crops were made, and its market value was $18 per ton. There is evidence from which the jury could have found that the appellee would have made $1,800 or $2,000 on appellant's land for that year under the lease. The evidence is conflicting as to whether or not he could have obtained the land from Weatherly he had worked during the year 1912, but it is certain that he could not have obtained as much as he would have had under the terms of the lease with appellant.

The jury found a verdict for appellee for the sum of $1,500. While the testimony is not clear and certain, as in the nature of things it would not be, and while there is also contradiction and conflict, and facts from which an inference could be drawn that appellee was not damaged as much as found by the jury, yet we do not think we would be justified in disturbing the verdict upon the insufficiency of the evidence.

[4] The third assignment of error is to the effect that the court erred in refusing to give specially requested instruction No. 2. This charge in part is that if the jury should find that appellee was entitled to recover upon the alleged breach—

"and you further find that plaintiff could, by the use of ordinary diligence and effort on his part, have procured a similar and like contract with other persons, or as much land as he could cultivate with a like team and tools and implements, that were agreed to be furnished by the defendant, and that he could have and would have produced like crops thereon, then you will find for the defendant for any and all years that plaintiff could have procured like contracts therefor and so say by your verdict."

We fail to find any evidence that appellee could have obtained a lease contract, like the one he had with appellant, with other persons for as much land, with like teams, tools, etc. The contract was a lease for the cultivation by appellee for 500 acres, or as much thereof as he desired. The appellee testifies that he could and would have cultivated that much of appellant's land. The evidence that he could procure but 185 acres, and the facts, we do not think show that the tools, implements, etc., furnished were the same as those contracted to be furnished by appellant.

[5] The appellant did not allege negligence on the part of the appellee in such a failure. We believe the burden was upon appellant to so allege and prove. Porter v. Burkett, 65 Tex. 383; Weber, etc., v. Bradford, 34 Tex. Civ. App. 543, 79 S. W. 46; Miller ·v. Sealy Oil Mill, etc., 166 S. W. 1182.

[6] If, however, the charge was a proper one under the pleadings and evidence, we think the court's charge sufficiently covered the issue. The charge of the court on this point is:

"5. You are further instructed that in the event you shall find that the contract was breached by defendant, as charged, then it was the duty of plaintiff, under the law, during the remainder of the term of said contract or lease, to exercise ordinary care and diligence to find and lease other premises or seek other employment, to prevent or diminish any damages that might result to him by reason of the breach of the lease contract complained of, if you find same was breached, and the defendant could not be held for any damages that may have resulted to plaintiff by reason of plaintiff's failure, if any, to exercise such ordinary care and diligence."

"7. You are further charged that, if you find for the plaintiff damages under the foregoing instructions, you will assess his damages as follows: You will allow him such sum if any, as you shall find from the evidence to be the reasonable market value on the said leased premises of one-half of the grain which you may find from the evidence plaintiff would in reasonable probability have grown on said premises for the years 1911, 1912, and 1913, deducting therefrom the following items, to wit: Such expenses other than plaintiff's own labor that plaintiff would have necessarily expended in cultivating, harvesting, and marketing said crops, and also such sums of money as he has earned since April 27, 1911, during the period of time and including the year 1913; or such sums of money as he could, by the use of ordinary care and diligence, have earned or made during such period of time, at the same or other employment—and the difference, if any, remaining after such deduction, would be the amount of your verdict."

It will be observed that in paragraph 5 of the court's charge the jury were told that it was the "duty" of appellee during the remainder of the term of said contract of lease to exercise ordinary care and diligence to find and lease other premises" to prevent or diminish the damages, and in the seventh paragraph they were charged to deduct such sums as he could have made by the use of ordinary diligence "at the same or other employment." This charge we think substantially submitted the issue requested by appellant, and that there was no error in refusing the charge of appellant.

[7] The fourth assignment claims error in the fifth paragraph of the court's charge, in that it ignored the fact that appellee occupied the premises for the year 1912 under a similar contract, and that, if said premises produced a like quantity as would probably have been produced on the leased premises, then appellant would be relieved from liability therefor. We think what has been said under the third assignment disposes of the fourth assignment. We think the court's charge on the measure of damages is in substantial conformity to the rule announced by the Supreme Court, in the cases of Rogers v. McGuffey, 96 Tex. 565, 74 S. W. 753, and Crews v. Cortez, 102 Tex. 111, 113 S. W. 523, 38 L. R. A. (N. S.) 713.

We overrule the fifth, sixth, and seventh assignments. The disposition made by us of the preceding assignments, we think, disposes of the latter.

We find no such error as will require a reversal of the cause, and it is therefore affirmed.