BEAUMONT COTTON OIL MILL CO. v.
SANDERS et al.  (No. 1326.)

(Court of Civil Appeals of Texas. Amarillo.
March 27, 1918.  Rehearing Denied May
8, 1918.)

1. CUSTOMS AND USAGES �köm5—GENERALITY.
    To be admissible, a custom must be so uni-
versal as to warrant the inference that the par-
ties contracted with reference thereto, and
should be established by clear and satisfactory
evidence as having existed for a length of time
so as to become widely known to warrant the
presumption the parties had it in view.

2. SALES �köm71(1)—PURCHASE OF COTTON
SEED—DUTY OF BUYER — LIMITATION OF
SHIPMENTS.
    Where the buyer of two cars of cotton seed,
when it made the contract of purchase, under-
stood there was no uniform size of cars used
in shipping cotton seed, it should have stipulat-
ed the amount per car, or the size of the car,
if it wished to limit the quantity of the seed
per car, and, after making the contract, it could
not ingraft its interpretation as calling for
not more than 10 tons of seed per car, and as-
sign a breach on the failure of the sellers to
accept the construction.

3. SALES �köm113—RENUNCIATION OF CON-
TRACT—TELEGRAM.
    A telegram sent by the buyer of cotton seed
to the sellers, stating that on seed purchased
from them the buyer would accept only 15
tons to the car, directing the sellers not to
ship out larger cars, as the buyer could not
accept and would not pay drafts for larger
shipments except at a reduced price, and stat-
ing that if the sellers had already shipped larg-
er cars the buyer would accept only the total
weight of the contract at the rate of 15 tons
per car, was not a renunciation of the contract
of purchase.

4. SALES ⊞⊞131—RENUNCIATION BY BUYER
—OBLIGATION OF SELLERS.
    If the buyer of personalty renounces his
contract, there is no obligation on the sellers to
accept the renunciation and treat the contract
as abandoned or annulled.

5. SALES ⊞⊞133—CONTROVERSY OVER TERMS
—DUTY OF PARTY.
    A mere controversy over the meaning of
the terms of a contract of sale did not require
the sellers either to rescind or to accept the
buyer's contention as to the amount of the
commodity sold it was permissible to ship in
each car.

6. SALES      ⊞⊞194 — BUYER'S BREACH —
FAILURE TO PAY.
    Where the sellers of two cars of cotton seed
observed their duty to place the seed sold on
board the cars and to draw on the buyer for
the sum due, under the contract, with bill of
lading attached, the buyer's failure to pay the
draft and receive the seed when delivered f. o.
b. at the sellers' shipping point was a breach
of the contract authorizing the sellers to re-
cover the damages sustained.

7. SALES ⊞⊞334—BREACH BY BUYER—DUTY
OF SELLERS—ENHANCING DAMAGES.
    After the buyer of cotton seed refused to
accept and pay therefor at the point agreed
upon, the sellers did not have the right to do
anything which would enhance their damages,
as to ship the seed back for sale on the market,
which would have added damages avoidable by
selling on the market where the seed was.

8. SALES ⊞⊞381—BREACH—REDUCTION OF
DAMAGES—BURDEN OF PROOF.
    In an action against the buyer of cotton
seed for its failure to receive and pay there-
for, if the seed, after the buyer's refusal, was
not sold to the best advantage by the sellers,
the buyer should show the fact.

9. SALES ⊞⊞384(1)—BREACH BY BUYER—
DAMAGES.
    The sellers of cotton seed, on the buyer's
breach by failing or refusing to receive and
pay therefor, were entitled to compensation
based on the ascertainment of what they would
have suffered by the continued breach down to
the time of completing performance, less any
abatement of which they should reasonably
have availed themselves.

10. SALES ⊞⊞384(7) — BUYER'S BREACH —
DAMAGES.
    Where the buyer of cotton seed refused to
receive and pay for that shipped, the sellers had
the right to sell the seed so shipped as the
property of the buyer on its account, and to
recover the difference between the contract
price and the price the seed brought, together
with necessary expenses.

    Appeal from Taylor County Court; E. M.
Overshiner, Judge.

    Action by J. E. Sanders and another against
the Beaumont Cotton Oil Mill Company.
From a judgment for plaintiffs, defendant
appeals. Affirmed.

    R. C. Chambers, of Abilene, and Smith,
Crawford & Sonfield, of Beaumont, for ap-
pellant.  Sayles & Sayles, of Abilene, for ap-
pellees.

    HUFF, C. J.  This action was brought by
Sanders and Will Stith against the Beaumont
Cotton Oil Mill Company upon an alleged
breach of contract, providing for the sale of
three cars of cotton seed at $40 per ton, f. o. b.
Lawn, Tex., and for special damages. The
defendant answered that the Railroad Com-
mission of Texas had fixed a carload of cot-
ton seed at 10 tons, and that it was so fixed
by the custom among shippers and dealers in
cotton seed, and that defendant had instruct-
ed plaintiffs not to ship more than 15 tons
per car before plaintiffs had loaded the car,
secured bill of lading, and drawn their drafts
on defendant, and if defendant breached the
contract such breach occurred before pro-
curing bills of lading and drawing the drafts,
and no necessity existed for incurring ex-
penses of freight, demurrage, and resale;
that after the cotton seed had reached Beau-
mont, Tex., defendant offered plaintiffs to
take so much of the cotton seed as would
amount to 15 tons per car at the original con-
tract price and pay the market price for the
balance, but plaintiffs refused such order;
that the cotton seed were not of the grade
and kind that were contracted for, but were
of an inferior grade and quality and contain-
ed considerable trash and dirt. The case was
tried before the court without a jury and he
filed the following findings of fact:
    "(1) That on the 26th day of October, 1915,
plaintiffs and defendant entered into the fol-
lowing contract in writing, viz.: 'Agreement
Covering the Sale of Cotton Seed. Agreement
covering sale of cotton seed this day made to the
Beaumont Cotton Oil Mills Company, of Beau-
mont, Tex., as follows: Abilene, Tex., October
26, 1915. In consideration of the sum of one
dollar, in hand paid, the receipt whereof is

hereby acknowledged, we have this day sold to the Beaumont Cotton Oil Company Mills two cars, tons, sound, dry, and clean cotton seed. Price $40 per ton, of 2,000 pounds, f. o. b. cars by Lawn station, shipment to be made as follows: Within 15 days, Santa Fé. Balance of this contract to be paid under the following terms: S. D. to be made with B. L. attached covering each car on the Beaumont Cotton Oil Company Mills, Beaumont, Tex., weights and quality guaranteed by the seller. The above accepted and agreed to by the undersigned. Beaumont Cotton Oil Company Mills, by J. A. Stoneham, Seed Buyer. Seller: J. E. Sanders Company. Town: Lawn, Texas. Date: 10/26/15. This contract or agreement made in triplicate, one copy retained by the seller, two to be mailed to J. A. Stoneham & Co., seed brokers, Abilene, Tex.'—and another contract of date October 25, 1915, to the same effect and tenor for one car of cotton seed.

"(2) At the time said contract was made and entered into plaintiffs had on hand at Lawn, Taylor county, Tex., about 120 tons of cotton seed of the kind and quality described in the contract.

"(3) As soon as cars could be obtained plaintiffs began loading the seed according to their contract on November 1, 1915; prior to the receipt of the following telegram had loaded to its full capacity in volume, but not in weight, one car of cotton seed and shipped same in accordance with contract, consigned to defendant at Beaumont, Tex. The other cars covered in said contract were in process of loading on said date, and subsequent to the receipt of said telegram the loading was completed, said cars being loaded to their full capacity in volume, but not in weight, and were shipped to defendant at Beaumont, Tex., within the time limit of said contract.

"(4) On November 2, 1915, plaintiffs received from defendant the following telegram: 'November 1, 1915. Advice that on seed purchased from you through Stoneham Company will accept only 15 tons to the car. Do not ship out larger cars than 15 tons as we cannot accept and will not pay drafts for larger shipments except at a reduced price. If you have already shipped larger car or cars will accept only to total weight of contract at rate of 15 tons per car. B. C. O. M. Co.'

"(5) That said three cars of cotton seed duly arrived at Beaumont, and were refused by the defendant, and payment of drafts drawn in accordance with the contract were refused.

"(6) That plaintiffs notified defendant on its refusal that they intended to resell the seed to protect themselves, and that defendant bid on said seed after said notification, but that plaintiffs resold said seed to the Magnolia Cotton Oil Company of Houston, Tex., at $37.50 per ton, which was a higher price than defendant offered for the seed.

"(7) That the seed shipped by plaintiffs were first-class, dry, sound, and clean cotton seed, according to the terms of the contract.

"(8) That there was no market for cotton seed in carload lots at Lawn, Tex., and that the plaintiffs acted in good faith, used due diligence, and obtained the best price for the seed obtainable.

"(9) That said cars were loaded with cotton seed as cars were usually and ordinarily loaded at Lawn, Tex. That cars furnished by railroad companies for the shipment of cotton seed are usually and ordinarily of different sizes and capacities, ranging from an indicated capacity on the car from 20 tons to 40 or more tons per car. That owing to the nature of cotton seed, if the space in said cars were entirely filled with cotton seed, it would not be loaded to its capacity in weight, and that the custom existed at Lawn and in Texas generally for the shipper to accept such cars as were tendered by the railroad

company and to load them by filling them full of cotton seed.

"(10) That the difference between the contract price of cotton seed and the sum for which they were resold on November 24, 1915, is $284.60, and that the freight, demurrage, and necessary expenses incurred by plaintiffs in reselling said seed amount to $458.18, paid out by plaintiffs on November 24, 1915.

"(11) This suit is based on a contract in writing made in Taylor county, Tex., based on telephone conversation between defendant's broker at Abilene and plaintiffs at Lawn, in Taylor county, Tex.

"In response to the request of the defendant for additional findings of fact and conclusions of law, the court finds the following facts and makes the following conclusions in the consecutive order of the request of the defendant:

"Additional Findings of Fact.

"(1) Defendant breached the contract of November 17, 1915.

"(2) Said breach was made at Beaumont, Tex.

"(3) Plaintiffs did not breach the contract.

"(4) Place of delivery under the terms of the written contracts was f. o. b. cars at Lawn, Tex., billed to Beaumont, Tex., with sight draft on the defendant at Beaumont, Tex., with bills of lading attached.

"(5) Said contract was to be performed both at Lawn, Tex., and Beaumont, Tex.

"(7) Plaintiffs were aware of the telegram set out in the court's original fourth finding of fact before plaintiffs secured bills of lading for two of the three cars; but this telegram is not notice to plaintiffs that the defendant would not accept the said cars if more than 15 tons were loaded in said cars.

"(8) The evidence does not show a market for cotton seed at Abilene, Tex., on November 1, 2, 3, 4, and 5, 1915.

"(9) The evidence does not show whether plaintiffs could have sold the seed in controversy at Abilene, Tex., or at what price.

"(10) Plaintiffs did not make any effort to sell the seed in controversy on said dates last above mentioned at Abilene, Tex., and the evidence does not show any market near Lawn, Tex.

"(11) There was no custom of dealers in cotton seed in Texas, relative to giving instructions to shipper when the contract is in writing and does not specify the number of tonnage to be placed in the cars when the contract just calls for a car of seed, or so many cars of seed.

"(12) The following respective numbers of pounds were placed in the following respective cars: A., T. & S. F. car No. 25950, a total of 56,260 pounds; M., K. & T. car No. 71152, a total of 56,920 pounds; Pa. car No. 34116, a total of 76,100 pounds."

The first assignment presents error in the findings of the court to the effect that the breach occurred on November 17, 1915, and in finding that the appellees, plaintiffs below, did not breach the contract for the reason, it is asserted, that the telegram of date November 1, 1915, which instructed appellee to place only 15 tons in said cars, and that if more than that number was put in said cars it would not receive the seed, and refused to accept the same, and the appellee Sanders, while testifying in his behalf, admitted that he had not made out the bills of lading for the shipment at the time the wire was received. The court's findings of fact have support in the evidence.

[1-5] There was no breach of the contract

by appellees unless they placed more seed in the car than the contract called for. The contract simply called for cars of seed, without stating the number of tons required to the car. The evidence as to the custom is conflicting, and it is also conflicting as to the understanding of what it takes for a car. Some testify 10 tons; some to the capacity of the car or all that could be placed in the car; and some that a customary car of seed was 20 tons or more. The evidence in this case shows the cars of seed were unequal in weight, but neither car was loaded to its capacity as to tons, but were as to bulk. A custom must be so universal as to warrant the inference that the parties contracted with reference thereto, and should be established by clear and satisfactory evidence, and must have existed for a length of time so as to become widely and generally known, such as will warrant a presumption that the parties had it in view at the time of entering into the contract. Wootters v. Kauffman, 67 Tex. 488, 3 S. W. 465. The trial court found in this case there was no custom among dealers in cotton seed relative to giving instructions to shippers when the contract does not specify the number of tons to be placed in the cars. The facts in this case will support the court's findings. On October 31, 1915, the appellant telegraphed and wrote, directing appellees not to load the cars with over 12 tons each, and on November 2d appellees received a wire from appellant that it would only accept 15 tons to the car, and would accept total weight of contract at rate of 15 tons per car. Appellant alleged that 10 tons constitute a car, and sought to prove that fact.

The evidence, on the other hand, showed the cars used in shipping cotton seed were not of uniform size, and further shows it had been the custom to place as much seed in a car as it would hold, and this, owing to their bulk, would not load a car to its capacity in tonnage. No particular size car was designated in the contract, and appellees, as was usual, placed their order with the railroad company for these cars without designating the size or capacity, and loaded none so received to the full capacity as to weight, but put in all they would hold in bulk. Appellant evidently, as to the custom, was not familiar therewith, or did not know it, as is evidenced by his wires. The evidence shows there was no uniform size of cars used in shipping cotton seed. The appellant, when it made its contract, evidently so understood, and should have stipulated in its contract the amount per car or the size of the car if he wished to limit the quantity of seed. After entering into the contract we do not think it could ingraft thereon its interpretation and assign a breach on the failure of appellees to accept its construction. "A contention over the terms of the contract and a refusal to perform in a particular manner or in some specific feature by one of the parties, would not show an abandonment of the contract authorizing the other party to elect to treat it as rescinded." Steinlein v. Blaisdell, 44 S. W. 200, 203; Smoots' Case, 15 Wall. 36, 21 L. Ed. 107. The wires sent by appellant were not renunciations of the contract, and if they had been there was no obligation on appellees to accept such renunciation and treat the contract as abandoned or annulled; neither did appellees, in refusing to comply with the instructions, renounce the contract as made. The facts only evidence a controversy over the construction to be placed upon what a car of cotton seed was.

[6-11] The second, third, fourth, and fifth assignments will be considered together. As above suggested, a mere controversy over the meaning of the terms of the contract did not require the appellees either to rescind the contract or accept the appellant's contention. We regard it to have been the duty of the appellees to place on board the cars at Lawn the cotton seed and draw on the appellant for the sum due under the contract, with bill of lading attached. It then became the duty of appellant, under its obligation, to pay the draft and receive the seed at Beaumont, where the seed were to be paid for under the terms of the contract. A failure to pay while they were in fact received when delivered f. o. b. at Lawn was a breach of the contract authorizing appellees to recover the damages sustained thereby. The court having found that the cotton seed were shipped as agreed upon, that is no more than was called for by the contract, and that the cotton seed were to be paid for at Beaumont upon bill of lading made to appellant as consignee at that place, and the failure upon its part to receive and pay for the seed left them yet in the actual possession of appellees, or under their control. After appellant refused to accept and pay for the seed at the point agreed upon, appellees did not have the right to do anything which would enhance the damages, and to have shipped them back to Lawn or Abilene for sale on the market at those places would have added further damages which could be easily avoided by selling on the market where they were. It therefore was not necessary to prove the market value of the seed at those two places.

It occurs to us if the seed were not sold to the best advantage appellant should have shown that fact. It was offered an opportunity to buy or to bid on the seed, and it appears to us that the seed was fairly sold and that appellant has no just cause of complaint. The appellees were entitled to compensation, based, as far as possible, on the ascertainment of what they would have suffered by the continued breach down to the time of completing performance, less any abatement by reason of circumstances of which he should reasonably have availed himself. This rule would apply if it had been found and held that the appellant breached its contract when

it wired appellees that it would only accept 15 tons to the car. Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953. It is not shown that the market price at Abilene or Lawn was better than at Beaumont. It would certainly be unreasonable to require the appellees to reship the seed to the initial point and there sell them. If there was any reason why they should have done so the record does not show it. In cases of this kind we understand the rule to be that appellees had the right. to sell the cotton seed so shipped as the property of appellant and sell them on appellant's account and recover the difference between the contract price and the price they brought, together with the necessary expenses effecting that sale. Waples v. Overacre, 77 Tex. 7, 13 S. W. 527; Palestine Ice Co. v. Water Connally Co., 148 S. W. 1109; Texas Seed, etc., v. Chicago Set, etc., 187 S. W. 747, 752 (6); Planters' Oil Co. v. Gresham, 202 S. W. 145, by this court, not yet reported, and authorities cited in the above cases.

The judgment will be affirmed.