MAIN v. HOPKINS.

No. 6034.

Court of Civil Appeals of Texas. Amarillo.

April 3, 1950.

breach of an alleged rent contract to a 400-acre farm in Hardeman County, Texas.

On April 26, 1946, according to the appellee's pleadings, the appellant by an oral contract rented the farm to the appellee for the crop year 1947–1948. The alleged oral contract stipulated that the appellee would reside on the farm and would plant all the land in wheat. As rent, the appellant would receive at the elevator one-third of the wheat free of cost to him. The appellee alleged that he was willing and able to perform the contract but that on or about May 8, 1947, the appellant, without provocation, repudiated the contract and rendered appellee's performance impossible. The appellee alleged that if he had planted and harvested the wheat for the crop year 1947–1948 as contemplated by the oral rent contract, he would have realized a net profit of not less than $11,700.

The appellant denied the oral rent contract. He pleaded, in substance, that even if such a contract had existed, as alleged by the appellee, it would have been made on April 26, 1946, and breached on May 10, 1947, the day appellee received appellant's letter denying the oral contract. The appellant further pleaded that appellee's cause of action, if any, accrued on May 10, 1947, and that since the appellee did not file this suit until June 18, 1949, the alleged cause of action was barred by the two-year Statute of Limitations. Further, the appellant alleged that after the appellee had received notice of the breach of the oral contract, he acquiesced in the breach; that he had never made any effort to obtain possession of the farm but had deliberately concealed his claim under the alleged oral contract; that he had permitted the appellant to rent the farm for the crop year 1947–1948 to Charley Wilhelm; that he had never offered to perform his part of the alleged agreement; and that, by reason of his conduct, the appellee is estopped to deny his acceptance of the alleged breach of May 10, 1947.

Trial was to a jury. To the four special issues submitted, the jury determined the following facts: That on April 26, 1946, the appellant rented the farm to the appellee for the crop year 1947–1948; that had

Leslie Thomas, Crowell, Brookreson & Brookreson, Seymour, for appellant.

Harry Bunnenberg, Vernon, O. L. Bell, Quanah, for appellee.

LUMPKIN, Justice.

The appellee, T. H. Hopkins, filed this suit for damages against the appellant, R. E. Main, as a result of an anticipatory

the appellee farmed the 400 acres, he would have reasonably received $8,000 for his two-thirds of the wheat crop; and that had the appellee farmed the land during the crop year 1947-1948, his reasonable expense in farming the place would have amounted to $2,700.

Special Issue 4 reads as follows: "Do you find from a preponderance of the evidence that the plaintiff, T. H. Hopkins, after he had received written notice from the defendant, R. E. Main, on or about the 10th day of May, 1947, of his refusal to rent him the land in question, by his words, actions and conduct, acquiesced in and accepted said refusal at such time?"

To this issue the jury answered "Yes."

The trial court overruled the appellant's motion for judgment and sustained the appellee's motion to disregard the jury's answer to Special Issue 4 and rendered judgment in favor of the appellee for $5,300. To this judgment the appellant duly perfected his appeal, and the case is now before this court for disposition.

In attacking the court's judgment, the appellant asserts that the appellee's purported cause of action is barred by the two-year Statute of Limitations, Article 5526, Sec. 4, Vernon's Annotated Civil Statutes. Since the jury found in answer to Special Issue 4 that the breach of the alleged oral contract was accepted by the appellee on May 10, 1947, and since the appellee did not file this case until June 13, 1949, more than two years after the purported cause of action accrued, the appellant contends that this suit is barred by the two-year Statute of Limitations. We cannot agree with the appellant in his contention.

In order to understand fully the appellee's cause of action, we must briefly review the evidence. Early in 1946 the appellee told the appellant that he wished to rent appellant's farm, which he had recently purchased. At the time of the purchase Charley Wilhelm was renting the place and residing on it; but immediately preceding the conversation between the appellee and the appellant, Wilhelm had moved. The appellant told the appellee that he wanted a tenant who would live on the place. After several conversations with the appellee, the appellant learned that it would be impossible for him to cancel Wilhelm's lease and rent the farm to the appellee for the crop year 1946–1947. Later, in the presence of witnesses, the appellant rented the 400 acres to the appellee for the following crop year (1947–1948) with the understanding that the appellee would reside on the place and would plant it in wheat. As rent for the place the appellee was to receive one-third of the wheat at the elevator. The jury found that this oral rental contract was made on April 26, 1946.

In the spring of 1947 the appellee made several unsuccessful trips to see the appellant and finally wrote the appellant that he wished to talk to him about the 400 acres he had rented. In reply he received the following letter:

"Thalia, Tex.
"May 8–1947

"Mr. T. H. Hopkins
"Dear Sir:

"I am very surprised you sending me a letter. I wrote you some months ago telling you I had not promised you a rental contract for land any amount.

"(Signed) R. E. Main."

The appellee stated the only letter he had received from the appellant was the one quoted above. He testified that he had not agreed to any repudiation of the contract but that he had elected to continue the rental contract in force. About July 1, 1947, he went to see if the farm was ready for his occupancy. He found the wheat harvested (the crop of 1946–1947) and Wilhelm plowing the land. The appellee reiterated that he had not agreed with the breaking of the contract on May 10, 1947, the day he had received appellant's letter of repudiation, and added that he "intended to make him stay hooked to it." He said that after the appellant's repudiation of May 10 he was willing to go ahead with the contract and wanted to do so; that even after receiving the letter, he had not conceded that the appellant considered his repudiation final and had not realized the appellant's position in the matter until about

July 1, 1947, when he saw Wilhelm plowing the land. At that time he realized that apparently the appellant had rented the farm to Wilhelm for the crop year 1947–1948.

◼◼ This case involves the law of anticipatory breach of a contract. An anticipatory breach of a contract is one committed before the time has arrived when there is a present duty of performance. It is the outcome of words or acts evincing an intention to refuse performance in the future. Our courts have held that upon the repudiation of a contract by one party, the other may elect either to rescind the contract and recover the value of any performance rendered, or to treat the repudiation as an immediate breach and sue at once for damages, or to treat the contract as binding and wait until the time of performance and thereafter bring an action on the contract for its breach. Kilgore v. Northwest Texas Baptist Educational Society, 90 Tex. 139, 37 S.W. 598; Bost v. McCrea, Tex.Civ. App., 172 S.W. 561; Texas Seed & Floral Co., v. Chicago Set & Seed Co., Tex.Civ. App., 187 S.W. 747; Palestine Ice, Fuel & Gin Co., v. Walter Connally & Co., Tex. Civ.App., 148 S.W. 1109, writ. ref.; Beaumont Cotton Oil Mill Co. v. Sanders, Tex. Civ.App., 203 S.W. 372; Bu-Vi-Bar Petroleum Corporation v. Krow, 10 Cir., 40 F. 2d 488, 69 A.L.R. 1295. When the appellee received the appellant's letter of May 8, the date alleged by the appellee as the time of repudiation (or May 10, the date insisted on by the appellant), the contract of April 26, 1946, was repudiated by the appellant. After receiving the letter, the appellee, according to his testimony, elected not to treat the appellant's breach as a termination of the contract but to hold the contract open until the date of performance. The appellant, however, insists that since more than two years have elapsed between the date of the repudiation and the date this suit was filed, the appellee's cause of action is barred by the two-year Statute of Limitations.

As we understand the terms of the contract, the appellee was to take possession of the farm after Wilhelm's wheat crop of 1946–1947 had been harvested. Although he had received the letter of repudiation on May 10, 1947, the appellee did not consider the contract terminated until he realized, about July 1, 1947, that the 400 acres had been rented not to him but to Wilhelm for the crop year 1947–1948.

◼◼ The well-established rule governing the running of the Statute of Limitations with respect to an anticipatory breach of an executory contract is well expressed by the annotators in 94 A.L.R. 456, which reads in part:

"The rule as to when the Statute of Limitations begins to run in case of an anticipatory breach of a contract is thus stated in Sec. 322 of the American Law Institute. Restatement of the Law of Contracts: 'If no action on an anticipatory breach is brought before the time fixed by the contract for the beginning of performance by the party who has committed such a breach, the period of the Statute of Limitations begins to run only from the time so fixed by the contract.' * * *

"In accord with the above statement, the rule is generally established by the cases that, where an action is brought after the time fixed by an executory contract, for the beginning of performance by a party who has committed an anticipatory breach, the period of limitations runs not from the time of such breach, but from the time fixed for performance by the defaulting party."

This suit was filed on June 13, 1949, less than two years after the time fixed for performance, and is not therefore barred by the two-year Statute of Limitations. Leonard v. Kendall, Tex.Civ.App., 190 S.W. 786, writ ref.

◼ Next, the appellant contends the court erred in sustaining the appellee's motion to disregard the jury's answer to Special Issue 4. In his motion the appellee insisted that the jury's answer is not supported by the evidence. To substantiate his contention, the appellant refers to a conversation between the appellee and Charley Wilhelm some time during the fall of 1946; at that time the appellee apologized for trying to rent the 400 acres. This conversation, the appellant insists, is in the nature of an acquiescence in appellant's repudia-

tion of the oral contract. The appellee denied the conversation. In our opinion the evidence is not sufficient to support the jury's finding that the appellee acquiesced in and accepted the repudiation of the contract as expressed in the appellant's letter of May 8, 1947. Obviously the date of Wilhelm's conversation with the appellee precedes the date of repudiation. The appellant has not cited other testimony supporting this point of error; furthermore, a search of the record on our part does not reveal any testimony supporting it. The evidence does reveal that the appellee never demanded possession of the farm from Wilhelm. In our opinion, this evidence offers no support to the appellant's contention, because Wilhelm was only a tenant and had no authority to yield possession of the land to appellee or any one else. Certainly such testimony does not show or tend to show that the appellee accepted the appellant's repudiation of May 10. Under the authority contained in Rule 301, Texas Rules of Civil Procedure, the trial court "may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence." There being no evidence to support the jury's finding to Special Issue 4, the trial court properly sustained the appellee's motion to disregard the finding and rendered judgment for the appellee.

We have carefully reviewed the record in this case. We find no reversible error. The appellant's points of error are overruled, and we affirm the judgment of the court below.