MAX VON WALDHEIM AND CLARA VON WALDHEIM, PLAINTIFFS-RESPONDENTS, v. ENGLEWOOD HEIGHTS ESTATES, INCORPORATED, A CORPORATION, AND TIETJEN REALTY COMPANY, INCORPORATED, A CORPORATION, DEFENDANTS-APPELLANTS.

Submitted February 15, 1935—Decided May 17, 1935.

For the plaintiffs-respondents *Warren Dixon, Jr.*

For the defendants-appellants, *Hart & Vanderwart.*

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The defendants appeal from a judgment recovered by the plaintiffs in the Circuit Court of Bergen county. The pertinent facts are as follows:

The parties had agreed, in writing, on October 11th, 1928, the plaintiffs to buy and the defendant Englewood Heights Estates, Incorporated, to sell a parcel of land known as lots 20, 21 and 22 in block 528-A, in Englewood Heights, New Jersey, for the price of $3,600, by installment contract calling for a down payment of $1,290, which was made. It contained a covenant requiring the purchaser to pay $30 on or before the first day of each succeeding month, beginning November 1st, 1928, until the entire purchase price was paid, together with interest at six per cent. per annum, payable quarterly, on the amount remaining unpaid.

The written agreement further provided that time was of the essence of the contract; that the failure of the seller to insist upon strict performance of any of the covenants was not to be construed as a "waiver or relinquishment for the future of any such covenant;" that should there be any default in the payment of any of the installments, and such default continue for sixty days, then on notice, all installments previously paid, might, at the option of the seller, be forfeited and retained by the seller as liquidated damages, or the seller had the right to seek specific performance; further, that when forty per cent. of the total purchase price had been paid a full covenant and warranty deed should be delivered to the purchaser who, in turn, agreed to execute and deliver to the seller a purchase-money mortgage for the unpaid balance. It was agreed by the seller that streets and sidewalks would be laid out in the neighborhood. No time within which these improvements were to be made was mentioned.

The testimony discloses that, prior to this suit, the plaintiffs had made payments amounting to $1,680, as well as additional sums for interest and taxes and the cost of a sewer system; that no deed was given the purchaser, as provided for in the contract of sale, although the amount paid was in excess of forty per cent. of the purchase price, and that in the year 1930, the State of New Jersey, acting through its state highway department, caused notice to be served upon the defendant, record owner of the land in question, that it

proposed to acquire these particular lots and other lands belonging to the defendants, for highway purposes.

The condemnation proceedings that followed resulted in an award of $17,875 for the property acquired, of which these lots were a part. The defendants received the entire award and proceeded to determine arbitrarily just what part of the sum awarded should be allotted to the plaintiffs for the three lots in question. From the testimony, it appears that the defendants took into consideration the amount that remained to be paid on the contract, viz., $2,251.25, and determined that the then value of the three lots, which the plaintiffs had purchased for $3,600, was but $2,490.79 and that the difference between these two, that is, $139.54, represented the plaintiff's compensation for the lots. A check for this sum was mailed to the plaintiffs.

The parties had notice of the proposed condemnation proceedings late in the year 1930. The condemnation was actually started in August, 1931, but the award was not paid until February, 1934. Upon receipt of the check for $139.54 the plaintiffs tendered it back to the defendant, seller, and brought suit for the amount paid by them under the contract, alleging that they had elected to rescind the contract since the party seller could not perform.

The trial resulted in a verdict for the plaintiffs for a sum equal to the payments made under the contract and they have a judgment in that amount.

The appellants filed six grounds of appeal, only two of which require discussion. The others have been abandoned or are unavailable as grounds for reversal. The two grounds to be discussed present a single question, namely, was there any evidence to go to the jury on the question of the rescission of the contract between the parties. If there was such evidence, then the appellants' motions for a nonsuit and a direction of verdict were properly denied.

The record discloses that the covenants of the contract had been breached by both parties. Admittedly no deed was given the plaintiffs by the seller and there was evidence that the neighborhood improvements, streets and sidewalks, had not

been installed in accordance with the agreement. Whether this latter is material or not is of no consequence. The plaintiffs, on the other hand, did not live up to the terms of the contract regarding installment payments. The contract called for a payment of $30 each month. For the first four months each installment was paid. In March of 1929, which was the fifth month, it was not paid. In April and May the payment was made, while there was none in June. Plaintiffs were then two months in arrears, but in July a payment of $90 cleared the arrears. There were but four payments made in the succeeding ten months. None the less the seller seems not to have objected nor to have endeavored to accomplish a forfeiture of the payments already made. However, when condemnation proceedings were begun, the testimony reveals that the plaintiffs elected to treat the contract as rescinded by demanding a return of the moneys paid thereunder, and there is testimony further to the effect that the defendant, seller, by its agent, had likewise treated the contract as rescinded by offering to substitute other lots in the place and stead of these mentioned in the contract of sale, which offer the plaintiffs rejected. The award was not paid until about February 1st, 1934, and on February 6th, 1934, the amount of $139.54, mentioned above, was forwarded to the plaintiffs. On February 13th, a rescission, in writing, was mailed to the defendants on behalf of the plaintiffs.

Prescinding entirely from the notice of rescission of February 13th, 1934, it appears that after notice of condemnation had been given in 1931, the plaintiffs, according to the testimony, demanded a return of the amount paid under the contract, and the seller, or its agent, responded by offering other land instead of the lots under contract. This testimony, if true, is evidence of rescission and the court properly left the question for the determination of the jury.

The appellant stresses the fact that on December 27th, 1933, the plaintiff and wife conveyed to the State of New Jersey all their right, title and interest in and to said land, which deed was recorded, &c. The deed was placed in evidence, as was a report of the title officer of the state highway

department, the latter showing that certain described lands (including these lots) had been acquired for a given sum. The report further shows that the entire award was paid to the defendant. The bargain and sale deed executed by the plaintiffs was, under these circumstances, a relinquishment of whatever right and title the plaintiffs may have had by virtue of their contract. From the testimony, it appears that this deed in question was executed at the request of the defendants' attorney and under the persuasion that it was necessary that the deed be signed by the plaintiffs in order that the defendant might obtain the award. Obviously, it was made without consideration moving to the plaintiffs.

To return to the main question, it is apparent that the contract between the parties became an impossible one to perform so far as the seller was concerned because of the condemnation. Under these circumstances, the plaintiffs are entitled to recover what they paid out under a contract, which the seller could not perform. It would be an unconscionable thing, since the seller couldn't perform, to permit retention of the consideration that had been paid. No damage is suffered by the defendants by the plaintiffs' previous breach of the contract. As a matter of fact, each and every past breach was waived. The lands in question were taken by another buyer, the state, under the Eminent Domain act. This visits no damage whatever upon the defendants that we can ascertain. If one party to a contract, at the time when further performance becomes impossible, has had, as here, a total failure of consideration for moneys paid, he may, in the absence of an express provision assuming the risk of the supervening impossibility, recover what he has paid or what has been disportionately paid.

The transaction between the parties was still executory in character—something remained to be done by each party to consummate the sale. In cases of this kind the general rule is that where impossibility of performance intervenes and one party has partially performed, as in this particular case, without receiving compensation or value, "justice requires the imposition of a *quasi*-contractual obligation on the party

receiving such performance to pay its fair value." See 3 *Williston on Contracts,* §§ 1972, 1974.

The judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.