74 N.J. Super. 12 (1962)
180 A.2d 393
MODEL VENDING, INC., PLAINTIFF,
v.
FRANK STANISCI, TRADING UNDER THE NAME AND STYLE OF CLAYTON LANES, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 23, 1962.
*13 Mr. M. Gene Haeberle, attorney for plaintiff.
Mr. Milton L. Silver, attorney for defendant.
RIZZI, J.D.C. (temporarily assigned).
This is an action for breach of contract by defendant in which plaintiff seeks damages for loss of profits under a written contract entered into between the parties under date of August 15, 1958. Plaintiff is in the business of leasing various types of merchandise machines, and on the above date the parties entered into a written agreement whereby machines were to be placed by plaintiff into defendant's bowling alley premises for a period of five years. This contract gave plaintiff the exclusive privilege of placing its machines for the purpose of selling the merchandise described therein at defendant's location during the existence of the contract. The case was tried by the court without a jury and, after the trial was completed, the court pronounced its findings of fact and conclusions of law which included, inter alia, that defendant had breached the contract on or about July 28, 1959 by having closed down plaintiff's machines and having commenced the sale of various items of merchandise through other methods on the premises in question. There was also the finding of fact that defendant's bowling alley premises had been completely destroyed by fire on March 24, 1961 and had never been reconstructed thereafter. Plaintiff claimed damages for loss of profits that he would have enjoyed during the five-year period commencing on August 15, 1958 and continuing until August 15, 1963.
The issues remaining to be decided were whether the contract became impossible of performance by the fire of March 24, 1961, and if so, whether such impossibility, in the face of the prior breach of the said contract, would disentitle plaintiff to damages for the full five-year period or until August 15, 1963, or whether such damages would be limited to the time before the fire.
It is defendant's contention that the destruction of the premises on which the contract was to be performed thereby *14 made the contract impossible of performance as of that date, and that plaintiff is only entitled to collect damages for loss of profits from the date of the contract to the date of the fire. Plaintiff contends that at the time of the fire defendant had already breached the contract, and therefore defendant's liability would continue during the full life of the contract, namely, until August 15, 1963, notwithstanding the destruction of the premises aforesaid. It has been conceded by the parties that if plaintiff is entitled to recover damages for the full five-year period, he will obtain a judgment for the sum of $7,924.21; but if plaintiff is limited in damages to the date of the fire aforesaid, he will be entitled to a judgment in the amount of $2,507.27.
The general rule has been stated in 12 Am. Jur. 372 to be that:
"Where the subject matter of a contract has been destroyed by an event occurring after the making of the contract rendering its performance impossible, which event could not reasonably be supposed to have been within the contemplation of the parties at the time of the contract, the promisor is discharged from the performance of the contract or the obligation to answer in damages for its non-performance."
This general rule has been followed by the courts of the State of New Jersey. Middlesex Water Co. v. Knappmann Whiting Co., 64 N.J.L. 240, 251 (E. & A. 1899); Perlee v. Jeffcott, 89 N.J.L. 34 (Sup. Ct. 1916); Matthews Const. Co. v. Brady, 104 N.J.L. 438 (E. & A. 1928).
I therefore find no difficulty in concluding as a matter of law that the destruction of the bowling alley premises on March 24, 1961 made the contract impossible of performance on that date.
Plaintiff urges, however, that the contract was already in breach on the day of the fire and that its damages should be measured during the entire five-year life of the contract. The court has already concluded that such breach occurred on or about July 28, 1959, when defendant had ceased the use of plaintiff's machines and had commenced the use of *15 other facilities for the sale of merchandise described in the contract. The diligent research of counsel has failed to produce any precedent by the courts of the State of New Jersey that deal directly with the factual situation herein described. The case of Von Waldheim v. Englewood Heights Estates, 115 N.J.L. 220 (E. & A. 1935), touches upon the problem. That case involved an installment contract for the sale of real estate, in which the buyer had been in default of payments at various times. After the contract had been entered into by the parties, the property was condemned by the State of New Jersey, the entire award having been paid over to the seller, who still held the legal title at the time of condemnation. The buyer started a suit against the seller for the return of the moneys that he had paid on the contract up to the time of condemnation. In allowing recovery to the plaintiff for the return of the moneys that he had paid, the court stated that:
"* * * it is apparent that the contract between the parties became an impossible one to perform so far as the seller was concerned because of the condemnation. Under these circumstances, the plaintiffs are entitled to recover what they paid out under a contract, which the seller could not perform. It would be an unconscionable thing, since the seller could not perform, to permit retention of the consideration that had been paid. No damage is suffered by the defendants by the plaintiffs' previous breach of the contract. As a matter of fact, each and every past breach was waived. The lands in question were taken by another buyer, the state, under the Eminent Domain Act (2 Comp. St. 1910, p. 2182 et seq., § 1 et seq., as amended, P.L. 1928, c. 91, p. 197 [Comp. St. Supp. 1930, § 66-18]). This visits no damage whatever upon the defendants that we can ascertain. If one party to a contract, at the time when further performance becomes impossible, has had, as here, a total failure of consideration for moneys paid, he may, in the absence of an express provision assuming the risk of the supervening impossibility, recover what he has paid or what has been disproportionately paid."
A reasonable analogy to the problem of supervening impossibility is found in the law of contracts concerning illegality as a defense, and particularly in situations where a contract was legal when made and an anticipatory repudiation of the contract followed by the promisor and thereafter the *16 performance of the acts contracted for had become illegal. This type of a situation is treated in 6 Williston, Contracts (rev. ed. 1938), § 1759, p. 4996, wherein the author states the following to be the law:
"Where there has been an anticipatory repudiation of the contract and subsequently, but before the date when the promised performance becomes due, that performance is made illegal, a practical defect in the doctrine of anticipatory breach is illustrated. The difficulty is not peculiar to cases of supervening illegality, but is involved in every other case where, after an anticipatory breach, supervening impossibility occurs which would in any event prevent and excuse performance of the contract. The situation differs, also, in only a slight particular, hereafter referred to, from one where it appears after the anticipatory breach that though there were no legal excuse the return performance could not or would not have been rendered to the repudiator. In each of these cases, if all the facts could have been known or foreseen at the time of the repudiation, no cause of action on the contract would have arisen. It is a practical disadvantage of the doctrine of anticipatory breach that an action may be brought and perhaps judgment obtained before the facts occur which prove that there should have been no recovery. Fortunately in most cases this evidence, though not available at the time of the repudiation, becomes available before judgment can be obtained.
It seems clear that if the evidence thus becomes available the plaintiff can recover no substantial damages, and in the case of supervening illegality which is not due to the defendant's fault, there seems no reason to allow even nominal damages. The loss should rest where chance has placed it; and the same should be true in case of any supervening excusable impossibility."
Concerning the effect of impossibility occurring after a breach of contract, Professor Williston had this to say as being the general law on the subject:
"Impossibility of performing his promise, of a kind that would have excused a contractual promisor if it had occurred before breach, may occur after he has already broken his contract. In considering the possible effects of this a distinction must be made between several situations:
(1) It may be supposed not only that the breach is total but that the time for the entire performance of the undertaking by the promisor has elapsed before the impossibility occurs.
(2) It may be supposed that the breach is total but that there has been actual failure to perform only part of the promisor's undertaking before the impossibility occurs.
*17 (3) It may be supposed that the breach is anticipatory and that there has been no actual failure to perform any part of the promisor's undertaking when the impossibility occurs.
(4) It may be supposed that the breach is partial."
Op. Cit., § 1967A, p. 5522.
The case here would seem to fall squarely within the situation which Professor Williston describes in paragraph 2 above, and as to which he summarized the law to be:
"In the second situation supposed the amount of recovery should be limited if it can be shown that the remaining performance due from the defendant after the breach would have been excused by impossibility. Thus, in an action on a contract of employment, broken by the wrongful discharge of the servant, evidence should be admitted of the employer's death after the breach but during the term of the promised services."
Op. Cit., § 1967A, p. 5524.
Restatement, Contracts, § 457, p. 849 (1932), discusses the effect of supervening impossibility in the following language:
"Except as stated in § 455, where, after the formation of a contract facts that a promisor had no reason to anticipate, and for the occurrence of which he is not in contributing fault, render performance of the promise impossible, the duty of the promisor is discharged, unless a contrary intention has been manifested, even though he has already committed a breach by anticipatory repudiation; but where such facts occur after the time when performance of a promise is due, they do not discharge a duty to make compensation for a breach of contract."
Following the above statement of law, various comments appear. Comment (d) appears to be particularly appropriate to the issue here involved and is stated as follows:
"Impossibility on the part of a promisor occurring after he has committed a breach does not ordinarily discharge him, but it will do so if the breach consists merely of an anticipatory repudiation. After a breach of any other kind impossibility supervening before the time for full performance has elapsed will limit the damages recoverable if the impossibility would have occurred had there been no breach. Thus if an employer or employee who breaks his contract becomes so ill shortly afterwards that the contract could not have been performed, recovery will be limited."
*18 In apparent contradiction to the above views is the statement made in 6 Corbin, Contracts, § 1341, p. 326 that:
"Impossibility of performance caused by death of a person or by the destruction of specific subject matter is not operative as a discharge if the breach for which suit is brought occurred before there was any such impossibility."
The author cites no cases, nor does he discuss the variations of the problem. It would appear that the statement was intended to apply to the situation where the supervening impossibility occurred after the entire time for performance of the executory contract had expired. In that view the statement of Corbin is not at variance with the rule expostulated by Williston and Restatement, supra.
The weight of authority leads the court to the view that upon breach of contract by a promisor, supervening impossibility occurring through destruction of the subject matter without the fault of the promisor will limit the damages recoverable to the time before the impossibility has taken place.
Plaintiff has advanced the further argument that assuming the court finds that the impossibility supervening the breach is sustained as a limiting defense, it is still essential that the destruction of the premises by fire be held to have been without the fault of the promisor. It argues that since defendant testified that he had insurance on his building and his insurance company has not yet settled his claim for losses under his policy an inference may be drawn that the fire occurred through his fault. The court finds that this inference is not justified from the facts adduced.
Judgment will be entered for the plaintiff in the sum of $2,507.27 and costs.