L. L. ADAMS, d/b/a Adams Motor
Company, Appellant,

v.

EASTEX FINANCE COMPANY, Appellee.

No. 35.

Court of Civil Appeals of Texas.

Tyler.

May 14, 1964.

C. L. Stanford, Canton, Boulter, Fowler & Tunnell, Tyler, for appellant.

Martin Z. Sammons, Jr., McLendon & Tyner, Tyler, for appellee.

MOORE, Justice.

This suit was filed by appellee, Eastex Finance Company, against appellant, L. L. Adams, a used car dealer, for the recovery of a deficiency judgment upon a series of promissory notes which Adams had theretofore executed for the purchase of twenty-two automobiles which the finance company had financed under what was termed as a "floor plan" method of financing, as well as for the recovery of damages resulting from a breach of contract by appellant in failing and refusing to repurchase from appellee thirty-nine automobiles, which appellee repossessed from customers of appellant under the "retail plan" of financing.

Appellant answered with a plea of accord and satisfaction and a general denial. Although his answer shows that he is not in accord with any of the steps taken by the finance company in the termination of the business relationship, he does not seek any affirmative relief by reason of the method employed by appellee.

Under the "Floor Plan" the finance company agreed to advance Adams the funds with which to purchase automobiles for resale, according to the following agreement.

"FLOOR PLAN Notes representing loans secured by motor vehicles purchased for resale shall be payable one month after date. Out of the proceeds of each of said loans, we shall retain a discount of $3.00 flat, and place in reserve the sum of $10.00 for credit to your collateral reserve account. All such loans draw interest at the rate of 7% per annum from date. The net advance to you on floor plan loans shall not exceed our estimated wholesale value of the motor vehicle given as security, as determined by Wholesale Value Schedules furnished you from time to time. Prior to the renewal or extension of any note, we may at our option, require a reduction to reduce the note commensurate with the current wholesale value of the security. * * *

"We are to retain in our possession certificates of title and/or other evidence of ownership to all motor vehicles floor planned until the notes secured by same are fully paid."

Under the retail plan the parties agreed as follows:

"RETAIL PLAN Unless otherwise agreed upon in writing at the time of purchase, notes are to be endorsed without recourse, provided however, that any vehicle repossessed by us for non-

payment of the note, for any other reason, will be repurchased by you when delivered to your place of business, for the amount of the unpaid balance then owing, less a reasonable allowance for unearned discount and insurance; and providing further, that in the event we are unable to repossess any motor vehicle within the period of six months after default, by reason of conversion, seizure by any Governmental Agency, or for any other reason, the unpaid balance of any such note may be charged to reserves hereafter accumulating to your credit."

Approximately seven months after commencing operations under these plans, appellant fell in arrears in the payment of all twenty-two notes which he had executed to the finance company on automobiles which he had purchased and was offering for sale under the "Floor Plan". Twelve of the notes were secured by chattel mortgages upon the respective vehicles, granting mortgagee the authority to take possession of and sell same at public or private sale, with the mortgagor agreeing to pay the deficiency. There were no separate chattel mortgages granting such power on the other ten automobiles; however, the notes executed by appellant did recite that the vehicles were mortgaged as security for the debt in accordance with an agreement theretofore made by the parties.

During the latter part of November, 1960, appellee, Eastex Finance Company, after having given appellant a week's notice, went upon appellant's used car lot at Grand Saline, Texas, and repossessed all twenty-two automobiles financed under the "Floor Plan", taking them to Tyler where they were sold.

At the time of the trial appellee had been compelled to repossess the thirty-nine automobiles which appellant had sold his customers and which had been financed by the company under the "Retail Plan" because of the failure of appellant's customers to pay the installment notes.

After a trial before the court, without a jury, the court, in his finding of fact and conclusions of law, found that all twenty-two promissory notes executed by appellant to the finance company covering automobiles financed on the "Floor Plan" was past due and no cash payments had been made thereon; that the deficiency, after allowing credit for the sale price of the twenty-two automobiles and the allowance for appellant's reserve account, was $7,952.04, including interest; that appellant gave no express consent to appellee to remove the automobiles from his lot, and that the price at which appellee sold the automobiles after repossessing same were reasonable prices; that appellant endorsed to appellee "without recourse" thirty-nine promissory notes executed by his customers for the purchase of automobiles; that all thirty-nine customers defaulted in the payment of the notes and appellee repossessed all thirty-nine automobiles because of non-payment; that some of the repossessed automobiles were offered to appellant for repurchase, but that he refused to repurchase same; that the difference between the face amount of the thirty-nine notes and the amount appellee received for the automobiles upon resale was $16,229.86, after allowing all reserves and other credits.

The court concluded, as a matter of law, that all of the twenty-two notes executed by appellant under the "floor plan" were due and unpaid; that appellant's failure to repurchase the vehicles repossessed by appellee under the "retail" notes constituted a breach and an anticipatory breach of the contract; that appellee was forced to repossess the thirty-nine vehicles in order to mitigate its damages for breach of the contract and that since appellant breached the "Retail Plan" contract appellee was entitled to be placed in the same position he would have occupied had the contract been completely performed by the appellant, i. e., appellee was entitled to judgment for damages in an amount equal to the unpaid balance due on retail notes in default after allowance of all credits.

Based upon such findings and conclusions, judgment was rendered for appellee, Eastex Finance Company, for $24,181.90, to which appellant excepted and perfected this appeal.

Appellant excepted to the findings made by the trial court, and has assigned seven points of error for a reversal of the judgment.

By point one, appellant alleges that the finding by the court that the market value of the twenty-two automobiles repossessed from appellant's used car lot was not comparable in value with the unpaid balance due on all the notes is contrary to the great weight and preponderance of the evidence. The finding on "comparable value" was in no way essential in support of the judgment and was immaterial. Appellant's point of error assigned thereto therefore becomes immaterial and is therefore overruled. Apparently the only reason for the complaint upon this finding was because appellant felt it was to some extent contrary to his defense of accord and satisfaction, but even so, the question of "comparable value" not being an essential element of accord and satisfaction, the point assigned would still be immaterial. Furthermore, the failure of the court to make finding upon any of the elements of accord and satisfaction was not made the basis of any assignment of error.

By points two, three, and four, appellant takes the position that the evidence does not support the finding by the court that the twenty-two floor plan notes were past due and unpaid and no payments were made thereon by appellant and the finding that appellee resold the automobiles for reasonable prices, and by point five appellant contends that there is no evidence to support the finding by the court that the "Floor Plan" notes were secured by chattel mortgages. These assignments are overruled. We have reviewed the entire record and find that there is ample evidence to support each of these findings. The rule well established that if there is any evidence of probative force to support a finding of fact by the trial court, such finding is binding on this court. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. Since appellant did not seek any affirmative relief for fraud, conversion, or breach of contract growing out of the foreclosure of the chattel mortgages, some, if not all, of the findings were immaterial to any issues in the case.

Point six alleges the trial court erred in finding and concluding that appellant failed to repurchase all of the vehicles repossessed by appellee under the "Retail Plan" notes and that such amounted to a breach and an anticipatory breach of the contract because same was not supported by the evidence. Appellee's agent, Dewey Chelf, testified that he had offered some of the repossessed vehicles to appellant but that he refused to accept any of them saying that he was unable to pay for them. The court chose to accept this testimony and base findings of fact thereon, and we are bound by this finding under the rule pointed out above.

In point seven appellant contends that as a matter of law the court erred in holding that the contract was breached and as a result thereof appellee had the right to sell the vehicles which he repossessed under the retail plan and sell same and recover judgment on the deficiency, less credit for his reserve account, because the contract did not authorize appellee to sell the vehicles. Appellant argues that since the notes were sold to appellee "without recourse" appellee cannot now bring suit upon the notes. This would no doubt be true if appellee had brought this suit for the purpose of collecting on the promissory notes. But as was pointed out in the beginning, this portion of the suit was not brought for the purpose of collecting on the notes but was brought against appellant for damages resulting from his breach of his contract whereby he agreed to repurchase all the automobiles repossessed from his customers because of their failure to pay their notes which appellant had assigned to appellee.

Appellant's refusal to repurchase the repossessed automobiles which were tendered to him constituted a breach of the contract as to those automobiles tendered. Such conduct, we think, then raised a fact issue as to whether or not appellant intended to repudiate the entire contract calling for the repurchase of the remaining automobiles. Based upon appellant's acts and conduct in this regard, the trial court found that appellant did not intend to repurchase any of the remaining automobiles repossessed in the future, which constituted an anticipatory breach of the entire contract. Under these circumstances, appellee was relieved of the responsibility of continuing to make a tender of each of the automobiles repossessed. In other words, appellee, being the innocent party, had no duty to continue performance or hold himself in readiness to performance, but had the right to rescind the contract and sue for damages for the breach of the contract. Young v. Watson, Tex.Civ.App., 140 S.W. 840; Main v. Hopkins, Tex.Civ.App., 229 S.W.2d 820.

 As pointed out above, all thirty-nine of the retail plan notes were in default and appellee had repossessed and sold all of the automobiles covered by these notes before this suit was filed. Under the terms of the agreement appellant was obligated to repurchase each of the automobiles and to pay appellee an amount equal to the unpaid balance on each of the notes. Appellant having breached the contract, appellee was entitled to damages equal to the pecuniary loss suffered and was entitled to be placed, as nearly as possible, in the same position that he would have occupied had the appellant performed the contract. Pollack v. Pollack, Tex.Com.App., 46 S.W.2d 292.

In answer to appellant's argument that appellee had no authority to repossess and sell the vehicles, we observe that attached to each of the retail notes, which were executed by appellant's customers, was a chattel mortgage securing payment and authorizing repossession and sale. Appellant assigned all thirty-nine mortgages to appellee along with the notes. Appellee, being the owner of the chattel mortgages by reason of the assignment, had the authority to repossess the automobiles and sell the same under the terms of the chattel mortgages, as well as a duty to mitigate the damages. Appellant's sixth and seventh points are overruled.

The judgment of the trial court is affirmed.

DUNAGAN, Chief Justice, took no part in the consideration or disposition of this case for the reason that he presided as trial judge on the case in the court below.