**Clayton BLAKEWAY et al., Appellants,**

**v.**

**GENERAL ELECTRIC CREDIT CORPORATION, Appellee.**

**No. 11613.**

Court of Civil Appeals of Texas.

Austin.

June 5, 1968.

Rehearing Denied June 26, 1968.

McGinnis, Lochridge, Kilgore, Byfield, Hunter & Wilson, Donald F. Nobles, Austin, for appellants.

Pearce & Smith, Maloney, Black & Hearne, Thomas Black, Austin, for appellee.

PHILLIPS, Chief Justice.

This case involves a breach of a lease agreement to purchase 120 television sets, among other property, and an action for damages.

In December of 1962 an agreement for the lease of 120 television receivers, 120 television bases, an antenna distribution system and certain related equipment was entered into between General Electric Credit Corporation as lessor and Ramada Inn Motel of Midland, Texas, as lessee. At the time of the execution of the lease agreement this Ramada Inn was owned by a partnership comprised of Clayton Blakeway and Donald McGregor. Subsequent to the execution of the lease agreement McGregor sold and transferred his interest in the partnership to appellant Ben W. Greig, Jr. Appellee had the lessor's interest in the agreement assigned to it subsequent to the execution thereof.

Appellants made 43 of the 60 payments provided for in the agreement, then made no payments after September, 1966.

In December of 1966, the Republic National Bank of Dallas foreclosed its deed of trust lien on the real estate and improvements in which the leased equipment was located. Since appellants had been dispossessed of the property where the leased equipment was located, they relinquished physical possession and control of the leased equipment to the Bank, who purchased the realty at the foreclosure sale.

During the early part of January, 1967, appellee requested the Bank to assume appellants' obligations under the lease agreement; however, the Bank repudiated the lease agreement. Appellee also tried to re-negotiate a lease agreement with the Bank, however this was also unfruitful.

On January 19, 1967, appellee notified appellants that it intended to hold a public sale of the leased television receivers on February 1, 1967. Appellee then published a notice of this proposed sale in a Midland newspaper on each day from January 23, 1967 through January 27, 1967. On February 1, 1967, appellee entertained bids to purchase the leased television equipment from a number of people; however, on its own bid, appellee was successful in purchasing this equipment for $2,400, which amount was credited to appellants.

Thereafter, appellee sold the equipment to the Republic National Bank of Dallas.

Appellees filed this suit in April, 1967. After trial on the merits, the court entered a take nothing judgment; however, the court,

on proper motion, and in December of 1967 after a second trial, entered judgment awarding appellees $6,103.06 in damages. Hence this appeal.

We affirm.

Appellants are before us on eleven points of error, the first three, briefed together, being the error of the trial court in his conclusion of law No. 1 that the lease was and is a valid and enforceable obligation and in failing to hold, as a matter of law and under the terms of the lease contract, that such lease contract was terminated by the parties; that in conclusion of law No. 6 appellee did not accept surrender of the lease and in failing to hold, as a matter of law, that appellee accepted surrender of the lease; in conclusion of law No. 4 that appellee was entitled under the lease and under the law to sell the leased equipment and recover its damages and in failing to hold, as a matter of law, that appellants were relieved of liability by reason of surrender of lease equipment by appellants and acceptance by appellee.

We overrule these points.

Appellants cite a number of cases [1] to the effect that where the lessor has taken possession of leased property before the expiration of the term of the lease or done any act inconsistent with the continuation of the "lessor-lessee" relationship, there is a termination of the lease as a matter of law.

It is conceded that appellants defaulted in the payments due after October, 1966. The court found, without objection, that in November, 1966, appellee unsuccessfully wrote appellants and requested immediate payment

1. "Rohrt v. Kelley Manufacturing Company, 162 Tex. 534, 349 S.W.2d 95 (1961); Dearborn Stove Co. v. Caples, 149 Tex. 563, 236 S.W.2d 486 (1951); Walter E. Heller & Company v. Allen, 412 S.W.2d 712 (Tex.Civ.App. Corpus Christi 1967, writ ref'd n. r. e.); Wheeler v. Thomas, 328 S.W.2d 891 (Tex.Civ. App. Beaumont 1959, no writ); Nutt v. Berry, 323 S.W.2d 500 (Tex.Civ.App. El Paso 1959, no writ); Flack v. Sarnosa Oil Corp., 293 S.W.2d 688 (Tex.Civ.App. San Antonio 1956, writ ref'd n. r. e.); Whitman v. Cearley, 251 S.W.2d 960 (Tex.Civ.App. Galveston 1952, writ ref'd n. r. e.); Barret v. Heartfield, 140 S.W. 2d 942 (Tex.Civ.App. Beaumont 1940, writ ref'd); Cannon v. Freyermuth, 4 S.W.2d 84 (Tex.Civ.App. Dallas 1928, no writ); Collier v. Wages, 246 S.W. 743 (Tex.Civ.App. Fort Worth 1922, no writ); South Falls Corporation v. Kalkstein, 349 F.2d 378 (Fifth Cir. 1965)."

of the delinquent rentals and *continued performance* of the lease contract. It is further conceded that in January, 1967, appellants allowed ad valorem taxes on the equipment to become delinquent and cancelled the insurance required by the lease. It is also conceded that in December of 1966, the Ramada Inn was conveyed through foreclosure to the Bank and appellants left the premises where the leased equipment was located and installed and relinquished all possession and control of the equipment to the Bank.

It was stipulated and found by the court that after appellants vacated the premises the Bank was called upon to honor the lease agreement; however, the Bank repudiated the lease and refused to make the delinquent payments current or to make any further payments thereon or to perform any of the duties or obligations of the lease. It was also found by the court that appellee attempted to renegotiate the lease with the Bank but was unsuccessful in this effort.

We hold that the trial court was correct in finding that appellants abandoned the leased property. Under the breach of the contract before us, appellees had either of two remedies: (1) sue for payments of the rents provided for in the contract, or (2) take possession of the property and sue for their damage which would be the difference between the rent contracted for and that received by appellees for the use of the property.[2] Stewart v. Basey, 241 S.W.2d 353 (Tex.Civ.App.Austin 1951), aff'd. 150 Tex. 666, 245 S.W.2d 484; Marathon Oil Co. v. Edwards, 96 S.W.2d 551 (Tex.Civ.App.Amarillo 1936, writ dis'm); Evons v. Winkler, 388 S.W.2d 265 (Tex.Civ.App. Corpus Christi 1965, writ ref'd n. r. e.).

The cases cited by appellants are not in point as they all involve situations where there was a surrender as a matter of law. The principle is well stated in Barret v.

Heartfield, 140 S.W.2d 942 (Tex.Civ.App. Beaumont 1940, writ ref'd) wherein the Court stated:

"[1, 2] When the tenant abandons the leased premises, it is the settled law of this state that the landlord may relet the premises by taking proper precaution not to create a surrender by operation of law. Early v. Isaacson, Tex.Civ.App., 31 S.W. 2d 515; see criticism of this case 9 Texas Law Review 578. So, the mere renting of the filling station by appellant to third parties after appellees' default in the payment of their rent notes and after they and their sublessee vacated the premises in violation of their contract did not terminate the rent contract and did not release appellees from the payment of the notes in controversy. Marathon Oil Co. v. Rone, Tex.Civ.App., 83 S.W.2d 1028."

The facts here amply support the finding of the trial court that the lease was abandoned.

Appellants' points four through seven, briefed together, are the error of the trial court in finding that there was no mutual agreement for appellee to accept surrender of the lease, since there was no evidence to support such findings; such finding is against the great weight and preponderance of the evidence; that appellee never intended to accept surrender of the lease since there was no evidence to support such finding; that such finding is against the great weight and preponderance of the evidence.

We overrule these points.

A landlord's acceptance of a lessee's surrender of a lease by abandonment occurs only by mutual agreement. There must be a showing of an intention on the part of the lessor to abrogate the contract. 36 Tex.Jur.2d "Landlord and Tenant," Secs. 360, 361. In this case the undisputed facts disclose that appellee continued to attempt

---

2. We see no disadvantage to appellant that appellee, being unable to lease the property, sold the property and thereby received a fair price for the use of the property for its life rather than a fair price for the use of the property for a limited time, presumably a lesser sum, if this had been possible.

enforcement of the lease long after it was abandoned by appellants, even to the point of negotiating with the Bank to which appellants relinquished possession of the sets. When the sets were finally sold, they were sold with full notice to appellants and the proceeds were applied to appellants' credit.

Appellants' eighth and ninth points, briefed together, are the error of the court in its conclusion of law No. 1 that the lease was and is a valid and enforceable obligation and in failing to hold, as a matter of law, that appellee in attempting to accelerate payments under the lease contract, which constitutes an attempt to impose a penalty on appellants and is, therefore, unenforceable; the error of the court in its conclusion of law No. 5 that appellee was damaged in the amount of $6,002.16, since there was no pleading or proof of appellee's actual damage.

We overrule these points.

The figure of $6,103.06 awarded to appellee by the District Court's judgment represents the following accounting:

| | |
|---|---|
| Accrued unpaid rentals at time of sale | $2,500.00 |
| Future rentals due under terms of lease contract | 6,002.16 |
| Total unpaid rentals | $8,503.06 |
| Proceeds of sale | 2,400.00 |
| Balance due | $6.103.06 |

---

As a general rule, damages for breach of contract seek to allow "the injured party to have the value to him of the contract's performance." Texas Pacific Coal & Oil Co. v. Barker, 117 Tex. 418, 6 S.W.2d 1031, 1037, 60 A.L.R. 936 (1928); or as stated differently by the Supreme Court in Stewart v. Basey, 150 Tex. 666, 245 S.W.2d 484, 486 (1952), "The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained."

Specifically, this general rule was applied in Stewart v. Basey in the exact manner that damages were computed in the present case. Stewart v. Basey involved a lease beginning January 1, 1949, and ending December 31, 1954, with a monthly rental of $325.00. The lessee paid the rentals through November, 1949, and then vacated the premises, returned the keys to the landlord and repudiated the contract. The lessors took possession of the premises, relet them to the exclusion of the lessee, and sued lessee for its damages.

One issue in Stewart v. Basey concerned a liquidated damages provision at $150.00 per month, and the Court found that this constituted a penalty. This issue is of no importance here because the liquidated damage provision did not give credit for rental received through reletting and was in no way related to "just compensation."

What is important here is that this Court remanded the case so as to assess damages at the rate of rental the lessor would have received under the lease through December 31, 1954, less the amount of rentals contemplated by the reletting contract. The measure of damages used by this Court is expressly stated as "the difference between the rent contracted for and that received." (241 S.W.2d at 357) This was explicitly approved by the Supreme Court. (245 S.W.2d at 487).

These monetary facts were pleaded, for the most part, as set out above. Thus the pleadings were adequate to substantiate appellee's loss under the contract.

Consequently, we overrule appellants' points ten and eleven which complain of the error of the trial court in finding of fact No. 7 that $6,002.16 represents the value to

appellee of full performance of the lease, since there was no evidence to support such finding and since such finding is against the great weight and preponderance of the evidence.

The judgment of the trial court is affirmed.

Affirmed.