**Mrs. R. WARNCKE, Appellant,**

v.

**Virginia D. TARBUTTON, Appellee.**

No. 14822.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 17, 1969.

Rehearing Denied Jan. 7, 1970.

James R. Warncke, San Antonio, for appellant.

Dodson, Duke & Branch, San Antonio, for appellee.

BARROW, Chief Justice.

Appellant has duly perfected her appeal from a take-nothing judgment entered after a non-jury trial in her suit to determine the liabilities and obligations of appellee under a lease contract, and to recover all sums owed thereunder.

On March 1, 1968, a written lease agreement was entered into by appellant as lessor, with appellee and her nephew, Roy Dugger, as lessees, whereby the premises known as 427 N. St. Mary's Street in the City of San Antonio were leased for a term of three years for the sum of $9,-000.00, payable at the rate of $250.00 on the 15th of each month. The first and last months rental were paid in advance. The building was to be occupied by Dugger for operation of a retail business of some type. The payments through May 15th were made by appellee. Sometime in June, 1968, Dugger became ill and the June-September payments were made by Maury Maverick, Jr., Esq., who advised appellant's son and agent, James R. Warncke, Esq., that he was representing Dugger. The payment due October 15, 1968, was not paid and Mr. Maverick advised Mr. Warncke at that time that Dugger was not going to pay any more rent and, furthermore, that the

"hippies" who then were in possession of the premises were not the agents of Dugger. Appellee's attorney was subsequently contacted by Mr. Warncke, and said attorney advised Warncke that appellee had no interest in the premises and repudiated any liability on the lease agreement. Nothing further transpired on this matter until November 8, 1968. At that time Mr. Warncke was advised that the police had raided the place and arrested the hippies. Warncke went to the premises and found the glass door broken open and the lock on the door frame drilled out. Mr. Warncke boarded up the door in order to secure the empty premises.

This suit was filed on November 26, 1968, and was tried on April 29, 1969. In the interim the premises were not rented although a "For Rent" sign was placed on the premises by Mr. Warncke. Appellant owned two other pieces of property adjoining this property, and for several years had experienced difficulty in renting each of the three properties because of the neighborhood. Mr. Warncke testified that the rental value of the premises from October 15, 1968, to the end of the term would not exceed $2,500.00. To the contrary, a real estate agent called by appellee testified that the rental value of the property for the balance of the lease term was $250.00 per month. This valuation was confirmed, in part at least, by Mr. Warncke's testimony that he was asking $250.00 per month rent for this and each of the two adjoining properties.

The trial court found that appellant took physical possession of the premises on November 8, 1968, and has had sole possession since that time. Further, that appellant, in her petition, alleged anticipatory breach and sued for damages for such breach. The court also found that the reasonable rental value of the premises during the unexpired term of said lease was $250.00 per month. The court concluded that appellant had forfeited and terminated the lease in resuming possession and control

of the premises on November 8, 1969. Furthermore, since appellant brought and tried her suit to recover damages for an anticipatory breach she was not entitled to recover any rentals. Since the reasonable rental value of the lease equaled the agreed rental under the lease for the unexpired term, appellant was not entitled to recover any sum as damages.

The lease agreement was on a printed form with the addition of a typed paragraph as follows: "12th. If Lessee shall fail for ten (10) days after rent becomes due to pay same, or shall violate or neglect any provision or instruction of this lease without the written consent of the Lessor, the Lessor *may* forfeit this lease and shall thereupon be entitled to enter upon and take possession of the premises." (Emphasis ours.) Here lessees not only failed to pay the rent on October 15th, but also expressly stated their intention to repudiate the lease. Appellant therefore had the right to exercise her option to terminate the lease. The basic question presented by this appeal is whether there is evidence to support the trial court's finding that appellant exercised such option to terminate the lease and sue for breach thereof.

■ Upon repudiation of the lease agreement by lessees, appellant had several alternative remedies open to her. She could accept the breach by appellee, retake possession of the property and sue for damages. In this event the measure of damages is the difference between the present value of the rentals contracted for in the lease and the reasonable cash market value of the lease for its unexpired term. Rohrt v. Kelley Mfg. Co., 162 Tex. 534, 349 S.W.2d 95 (1961); White v. Watkins, 385 S.W.2d 267 (Tex.Civ.App.—Waco 1964, no writ); Wukasch v. Hoover, 247 S.W.2d 593 (Tex.Civ.App.—Austin 1952) affirmed, Hoover v. Wukasch, 152 Tex. 111, 254 S.W.2d 507 (1953). Or appellant could have kept the lease agreement alive, relet the premises for the remainder of

the unexpired term [1] and held lessees liable for any deficiency. Holloway v. Zapara, 412 S.W.2d 943 (Tex.Civ.App.—San Antonio 1967, no writ); Evons v. Winkler, 388 S.W.2d 265 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.); 35 Tex. Jur.2d, Landlord and Tenant, § 125.

Although these rules are clear enough, it is difficult from the meager record before us to determine which situation is applicable. Appellant did not at any time advise appellee that the lease agreement was terminated; therefore, we must see if appellant terminated the agreement by other acts. Cf. Rohrt v. Kelley Mfg. Co., supra. Lessees' breach and repudiation occurred about October 15, 1968, and no action was taken on same by appellant prior to November 8, 1969. Can it be said that her action in boarding up the broken door after the police had forcibly removed the trespassing hippies is some evidence of appellant's intention to accept appellee's repudiation of the lease agreement and to terminate same? We think not. Nothing is shown by such act other than a reasonable attempt to protect such property. This act occurred more than three weeks after appellee had notified appellant that she repudiated any interest in the lease agreement or liability for same. Appellee does not even assert that she was thereby excluded from the premises. Appellant's subsequent attempt to rent the premises is not evidence of a repudiation of the lease agreement. She had the right to do so under the terms of the lease agreement, and any rent received would have operated to the benefit of appellee by reducing the amount of rental due.

A more difficult question is presented as to the effect of the petition filed herein and the relief sought by appellant. She alleged the anticipatory breach and repudiation of the lease agreement by Dugger and appellee and sought a declaration of the liability of appellee under the lease agreement, together with judgment based on such liability. Although appellant referred to the anticipatory breach by appellee, she did not allege that same was accepted by her or that the agreement was terminated, nor did she allege damages based on the difference between the reasonable cash market value of the unexpired term of the lease and the agreed rental, which is the proper measure of damages for an anticipatory breach. Rather, appellant sought to recover judgment for all the rentals provided in the lease agreement. In the alternative, she sought judgment for the unpaid rents up to the time of the trial. In considering this petition from its four corners, we cannot say that same establishes an intention by appellant to repudiate or terminate the lease agreement. To the contrary, it seeks a determination of appellee's liability under such agreement.

Nevertheless, the only evidence offered by appellant was directed toward a determination of the difference between the unpaid rentals and the reasonable cash market value of the lease from *October 15, 1968, to the expiration of the lease.* Appellant's son and attorney, Mr. Warncke, testified on direct evidence and in rebuttal that the reasonable cash market value of the lease for such period was not over $2,500.00. Appellee's expert witness testified and was cross-examined as to the reasonable cash market value for the same period. Furthermore, a bill of exception filed herein, as qualified by the trial judge, establishes that although appellant suggested a recovery of rent only to the time of trial, appellant throughout the trial sought to recover damages for breach of such agreement from October 15, 1968.

■ We conclude that appellant did not elect, prior to the trial, to accept the repudiation of the lease agreement by appellee. She is therefore entitled to recover the amount of unpaid rental to date of trial and the damages, if any, from such date for breach of the lease agreement. The sum of $1,750.00 was due and unpaid on the

---

1. We do not here consider whether lessor is obligated to relet the premises.

lease agreement up to the time of trial. The trial court found that appellant had been trying without success to rent such property and nothing had been realized by her. There is sufficient evidence to support the trial court's finding that the reasonable cash market value of the premises for the unexpired term of the lease is equal to the agreed rental. Therefore, appellant is not entitled to recover any damages for the period subsequent to the trial.

The judgment of the trial court is reversed and here rendered that appellant recover the sum of $1,750.00 for the unpaid rents up to the time of trial and that she take nothing as to all other relief sought. The costs of this appeal are taxed against appellee.