**FARMERS AND BANKERS LIFE INSURANCE COMPANY, Plaintiff-Appellee,**

v.

**ST. REGIS PAPER COMPANY, Defendant-Appellant,**

v.

**F & H WAREHOUSE COMPANY, Third Party Defendant-Appellee.**

No. 71-2038.

United States Court of Appeals, Fifth Circuit.

Feb. 1, 1972.

Clark, Circuit Judge, concurred in part and dissented in part and filed opinion.

we disapproved further use of the *Blue* charge in this Circuit.

348

---

John C. Snodgrass, Travis C. Broesche, Houston, Tex., Alton R. Griffin, Lubbock, Tex., for defendant-appellant; Vinson, Elkins, Searls & Smith, Houston, Tex., of counsel.

Don Graf, Hugh Anderson, Anderson, Edwards & Warnick, Nelson, McCleskey, Harriger & Brazill, Lubbock, Tex., for plaintiff-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

 This case involves the extent of St. Regis Paper Company's (St. Regis) liability growing out of the repudiation of its obligations under a lease contract in light of the destruction of the lease premises after repudiation but before the end of the lease term.[1]

1. This controversy is in the federal courts by virtue of diversity jurisdiction. 28 U.S.C. § 1332. As the lease contract was executed and the premises located in Texas, there is no question that the substantive law of Texas is controlling. *See, e. g.,* Consolidated Sun Ray, Inc. v. Oppenstein, 8th Cir. 1964, 335 F.2d 801.

On February 27, 1959, F & H Warehouse Company (Warehouse Company) agreed to lease a warehouse in Lubbock, Texas to Lubbock Bag Company for a period of twenty years from April 1, 1959 to March 31, 1979. For the first ten years of the lease term the stipulated monthly rent was to be $1,000.00, increasing to $1,500.00 during the second ten years. Lessee was to pay all taxes on the property and maintain the warehouse.

As a result of various corporate mergers, St. Regis became obligated as lessee in December, 1959. In 1968, Warehouse Company assigned the lease contract to Farmers & Bankers Life Insurance Company (F & B) as security for a loan. St. Regis continued to occupy the warehouse and pay rent until July, 1968, when it abandoned the premises on the basis of an alleged constructive eviction.

On December 6, 1968, F & B filed suit against St. Regis in state court to collect rents accrued and unpaid from July, 1968 through December, 1968. St. Regis answered and filed a third-party action against Warehouse Company, seeking to avoid double liability. Warehouse Company responded by claiming damages for anticipatory breach.

In March, 1970 F & B filed its First Amended Petition in the state court, amending its plea for relief to include rents accruing since the date of its initial pleading. The damages sought thus exceeded $10,000.00, and St. Regis thereupon removed the case to federal court on the basis of diversity of citizenship.

On May 11, 1970, a tornado struck Lubbock, Texas, and the warehouse in question was completely destroyed. On February 19, 1971, F & B amended its pleading once more to include rents accrued through May, 1970 and for the first time incorporated an alternate measure of damages based on a theory of anticipatory breach.

The case was tried in March, 1971. The jury answered two special damage issues, both based on the theory of anticipatory breach. On March 31, 1970, the district court entered judgment against St. Regis for $95,000.00 in part, based on the jury's determination of the value of the lease to the lessor from July 1, 1968 to March 31, 1979, less the fair rental value for the same period. We affirm.

St. Regis first contends that there has been no anticipatory breach of the lease. This argument is based on the contention that the lease contract remained in force on May 11, 1970 and was terminated by the destruction of the lease premises. It is undisputed that St. Regis repudiated the lease prior to May 11, 1970. St. Regis, however, argues that F & B failed to accept the repudiation and chose instead to keep the lease in effect until after its termination.

■ Under applicable Texas law, an anticipatory breach requires both a repudiation and an acceptance by the innocent party. Humphrey v. Placid Oil Company, E.D.Tex.1956, 142 F.Supp. 246, aff'd, 5th Cir. 1957, 244 F.2d 184; Warncke v. Tarbutton, 449 S.W.2d 363 (Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e.); Blakeway v. General Electric Credit Corporation, 429 S.W.2d 925 (Tex.Civ.App.—Austin 1968, writ ref'd n.r.e.); Continental Casualty Company v. Boerger, 389 S.W.2d 566 (Tex.Civ. App.—Waco 1965, writ dism'd). Until acceptance by the lessor, the lease is in effect for all purposes, and intervening events may relieve the breaching party of his obligations under the contract despite his prior repudiation. Greenwall Theatrical Circuit Company v. Markowitz, 97 Tex. 479, 79 S.W. 1069 (1904);

We recognize that where, as in the instant case, a federal court is faced with a lack of controlling state judicial authority, it must determine as best it can what the state court would decide if confronted with the same set of facts. Cox v. United States, 5th Cir. 1970, 421 F.2d 576; International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv., 5th Cir. 1968, 400 F.2d 465; Stevens Industries, Inc. v. Maryland Cas. Co., 5th Cir. 1968, 391 F. 2d 411.

Pollack v. Pollack, 39 S.W.2d 853 (Tex. Com.App.1931); Vise v. Foster, 247 S. W.2d 274 (Tex.Civ.App.—Waco 1952, writ ref'd n.r.e.).

The resolution of the issue involved in the instant case must, therefore, turn on whether there was an *acceptance* of St. Regis' repudiation prior to a *termination* of the lease.[2]

■ It is clear that F & B did not accept St. Regis' repudiation prior to its Second Amended Pleading of February 19, 1971. Until that time, F & B had maintained a consistent course of conduct evidencing a desire and intent to keep the lease in full force and effect and to bring suit only for rental payments as they accrued. *See* Perkins v. Harper, 330 S.W.2d 241 (Tex.Civ.App. —San Antonio 1959, writ ref'd n.r.e.); Kingsbery v. Phillips Petroleum Company, 315 S.W.2d 561 (Tex.Civ.App.—Austin 1958, writ ref'd n.r.e.); Marathon Oil Company v. Rone, 83 S.W.2d 1028 (Tex.Civ.App.—Ft. Worth 1935, writ ref'd); Leonard v. Kendall, 190 S.W. 786 (Tex.Civ.App.—Dallas 1916, writ ref'd). F & B argues, however, that Warehouse Company's claim for anticipatory breach in December, 1968, in answer to St. Regis' third-party action, operated as an acceptance of St. Regis' repudiation.

The assignment contract between Warehouse Company and F & B did not purport to transfer to F & B all right, title and interest in the lease agreement. It instead provided:

> This assignment shall constitute a direction to and full authority to the lessee to pay upon demand by assignee all such rents and other benefits to assignee or to whomever assignee shall empower. Further, the owner, hereby authorizes assignee, at its option, at any time after default shall occur under the terms and provisions of this assignment or of the note, mortgage or other security instruments, to enter upon the said mortgaged premises by its officers, agents or employees for the operation and maintenance of said mortgage premises.

The assignment on its face thus shows that it was made only to secure an indebtedness owed by Warehouse Company to F & B. The only right acquired by F & B by virtue of the assignment was to have its debt reimbursed out of the lease proceeds. It did not transfer Warehouse Company's status as lessor to F & B. *See* Cawthorn v. Perry, 76 Tex. 383, 13 S.W. 268 (Tex.1890); Lewy v. Gillard, 76 Tex. 400, 13 S.W. 304 (Tex. 1890); Ft. Worth & Denver Railway Company v. Ferguson, 261 S.W.2d 874 (Tex.Civ. App.—Ft. Worth 1953, writ dism'd). St. Regis contends that the assignment at least operated to prohibit a surrender of the lease by Warehouse Company

---

2. F & B contends that no election of remedies is necessary until time of trial. This is ordinarily true. McKenzie v. Carte, 385 S.W.2d 520 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.); Warneke v. Tarbutton, 449 S.W.2d 363 (Tex.Civ.App.—San Antonio 1969, writ ref'd n. r. e.); Wood v. Williams, 46 S.W. 2d 332 (Tex.Civ.App.—San Antonio 1932, writ dism'd). Only if the failure to elect is relied upon by the repudiator or if the repudiation is withdrawn prior to acceptance is the innocent party normally bound. Johnson v. First Nat'l Bank of Marlin, 198 S.W. 990 (Tex.Civ.App.—Austin 1917, writ ref'd); Lumbermen's Mutual Cas. Co. v. Klotz, 5th Cir. 1958, 251 F.2d 499. Efforts to induce the defaulting party to perform its contract do not waive the offered breach. Commercial Credit Corp. v. Taylor, 448 S.W.2d 190 (Tex.Civ.App.—Tyler 1969, no writ); Rapid Transit Lines, Inc. v. Transit Ads, Inc., 401 S.W.2d 276 (Tex.Civ.App.—Eastland 1966, no writ); Haddaway v. Smith, 277 S.W. 728 (Tex.Civ.App.—Amarillo 1925, no writ); Restatement of Contracts § 320; Williston on Contracts § 1334 (3d Ed.).

None of the authorities cited by F & B, however, involve an intervening act or agency which might, in and of itself, terminate the lease. No Texas cases appear to be in point. In such circumstances, we believe that Texas courts, under the general rules enunciated previously, would hold that termination of the lease prior to lessor's acceptance of the lessee's repudiation would operate to negate any claim of the lessor for anticipatory breach.

without the express consent of F & B. Assuming that St. Regis has standing to complain of F & B's failure to consent to Warehouse Company's acceptance of St. Regis' repudiation [3], we do not think that the language of the assignment operates as thought by St. Regis.

The assignment on its face destroys none of Warehouse Company's general rights as lessor. Any right of entry or forfeiture granted to F & B, even if exclusive as contended by St. Regis, did not take effect until "at its option, at any time after default [of Warehouse Company] shall occur." This provision should settle the issue once and for all. It is not alleged that Warehouse Company had defaulted on its note or its obligation to F & B. Until such occurrence Warehouse Company by the plain terms of the assignment specifically reserved the right to enter the premises and accept St. Regis' repudiation.

We therefore hold that Warehouse Company, in accordance with its status as lessor and its rights under the assignment agreement, accepted the repudiation by St. Regis prior to any termination of the lease.

We gratuitously point out that even if it could be determined that no such acceptance occurred prior to the destruction of the warehouse on May 11, 1970, we would not find this fact dispositive. We are further unconvinced that the lease was terminated on that date. The lease contract provides in pertinent part:

> Should the leased premises be destroyed by . . . windstorm or the act of God . . ., [Warehouse Company] may, at its option, rebuild such premises, in which event the rent payable hereunder shall abate for the period of time beginning with such destruction and terminating when the premises are again fit for occupancy and the term of this lease contract shall be extended for a like period of time. *Should [Warehouse Company] elect not to rebuild said improvements . . ., then this lease shall terminate* and the rental payments hereunder provided shall cease as of the date of such destruction . . . . (Emphasis added)

No proof has been provided that F & B or Warehouse Company elected at any time not to rebuild the premises. Surely such an election cannot be inferred from the mere failure of Warehouse Company to rebuild in the face of St. Regis' repudiation. If St. Regis had withdrawn its prior repudiation and Warehouse Company had refused to rebuild, we would have less trouble with this contention. Under the circumstances of the instant case, however, no such offer to withdraw was made. We thus find it inappropriate to penalize Warehouse Company for the mere failure to rebuild in the face of St. Regis' refusal to pay rent. *See* Vise v. Foster, *supra* 247 S.W.2d at 282 (motion for rehearing).

St. Regis next contends that the measure of damages used by the district court is not in harmony with the general compensatory damage principles in effect for cases involving breach of contract. The purpose of damage awards in such cases is admittedly to compensate the injured party for loss occasioned by the conduct of the breaching party, not to penalize the wrongdoer or to allow plaintiff to recover a windfall. *E. g.,* Blakeway v. General Electric Credit Corporation, 429 S.W.2d 925 (Tex.Civ.App.—Austin 1968, writ ref'd n.r.e.); Adams v. Eastex Finance Company, 379 S.W.2d 355 (Tex.Civ.App.—Tyler 1964, no writ history); Manney v. Burgess, 346 S.W.2d 937 (Tex.Civ.App.—Ft. Worth 1961, no writ).

St. Regis, on the basis of these principles, claims that the district court should have taken the ultimate destruc-

---

3. There is some authority to the effect that St. Regis is entitled only to protection from the risk of paying its obligations under its lease agreement twice. Cf. Ft. Worth & Denver Ry. Co. v. Ferguson, 261 S.W.2d 874 (Tex.Civ.App.—Ft. Worth 1953, writ dism'd).

tion of the warehouse into consideration in assessing damages. Under this theory, St. Regis would not be liable for any damage after May 11, 1970. All cases cited by St. Regis for this proposition involve situations in which after breach, but before trial, intervening events made performance by the innocent party impossible.[4] A distinction must be made between these authorities and Texas cases to the effect that the innocent party after repudiation is not required, in order to recover anticipatory damages, to perform his obligations under the contract. The lessor need not maintain the leased premises for the lessee under such circumstances. Blakeway v. General Electric Credit Corporation, *supra*; Employment Advisors, Incorporated v. Sparks, 364 S.W.2d 478 (Tex.Civ.App.—Waco 1963, writ ref'd n.r.e.); Evons v. Winkler, 388 S.W.2d 265 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.). *See also* Roehm v. Horst, 178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953 (1899); Anvil Mining Company v. Humble, 153 U.S. 540, 14 S.Ct. 876, 38 L.Ed. 814 (1894); Greenwall Theatrical Circuit Company v. Markowitz, 97 Tex. 479, 79 S.W. 1069 (1904); Young v. Watson, 140 S.W. 840 (Tex.Civ.App.—Galveston 1911, writ ref'd); Williston on Contracts § 1313(3d ed.)

The instant case does not involve impossibility of performance or an automatic termination of the lease upon the happening of a specified event. It involves only an obligation of the lessor which lessor was fully capable of performing at all times. Although Warehouse Company in the instant case had the capacity and the contractual right to perform its obligation, it is clear under Texas law that he had no obligation to

do so. His failure to do so before the time of trial cannot, therefore, serve to mitigate St. Regis' obligation.

■ A close examination of the judgment's effect on Warehouse Company and F & B will reveal that no windfall has accrued. Under the lease, Warehouse Company would have been entitled to receive lease rentals in the amount of $189,000.00, plus taxes and maintenance on its building for the remainder of the lease term. The benefit of Warehouse Company's bargain was found by the jury to be in the amount of $95,000.00. The jury was charged to consider the amount of income that Warehouse Company could expect from the premises for the remainder of the lease term. This method of computation assumes that the warehouse will be rebuilt at Warehouse Company's expense and comports with the generally accepted measure of damages for anticipatory breach. *See, e. g.,* White v. Watkins, 385 S.W.2d 267 (Tex.Civ.App.—Waco 1964, no writ); Comment, 13 Baylor L.Rev. 374 (1961). St. Regis can ask for no more.

With all deference to our dissenting colleague, we think further jury consideration of whether the warehouse will likely be rebuilt is unnecessary. Involved here is a depreciable asset the cost of which in a going business concern can always, in the absence of extraordinary circumstances, be recouped. If Warehouse Company rebuilds the warehouse it will at the end of the term possess a valuable asset and will have, during the remaining lease term, depreciated the remaining cost. There is no doubt, and the dissent does not disagree, that under these circumstances the jury verdict is correct. If, on the other hand,

4. New York Trust Co. v. Island Oil & Trans. Corp., 2d Cir. 1929, 34 F.2d 653 (bankruptcy of innocent party); Jones v Fuller-Garvey Corp., 386 P.2d 838 (Alaska 1963) (destruction of leased premises by fire, no right to rebuild); Fratelli Pantanella, S.A. v. International Comm'l Corp., 89 N.Y.S.2d 736 (Sup.Ct.1945) (failure to obtain govt. license rendered consummation of sale impossible); Model

Vending, Inc. v. Stanisci, 74 N.J.Super. 12, 180 A.2d 393 (1962) (destruction of premises by fire, no right to rebuild); Hodes v. Hoffman Internat'l Corp., S.D. N.Y.1968, 280 F.Supp. 252; (bankruptcy of plaintiff). *See also* 6 Williston on Contracts § 1759, at 4996 (Ref. ed. 1938) (rule only applies to supervening illegality of impossibility).

Warehouse Company does not rebuild, it spends nothing, has no assets at the end of the lease term, gets no depreciation expense, and gains only the amount of the jury verdict. The net gain by Warehouse Company would thus be identical to that reaped if the warehouse is rebuilt.

Under these circumstances, there is no cause for further jury consideration in the absence of proof by St. Regis that because of some peculiar circumstances in this particular case the generally accepted measure of damages will offer plaintiff a windfall. This measure assumes that either the warehouse will be rebuilt or at least that it will make no economic difference. Any other assumption on our part would be a determination from the mere failure to rebuild in the face of St. Regis' repudiation that Warehouse Company has *elected* not to rebuild at the time of trial. An election after the time of trial would, of course, not affect damages for an anticipatory breach. In the complete absence of any evidence tending to show negative economic consequences from the exercise of the option to rebuild, we decline to so assume.

Accordingly, the judgment of the district court is affirmed.

CLARK, Circuit Judge (concurring in part and dissenting in part).

I concur in all of Judge Thornberry's opinion except that related to the manner in which the jury was presented their task of resolving the issue of damages resulting from St. Regis's anticipatory breach of the lease agreement. As the majority points out, the basis for the measure of damages rule in such a situation is well-settled under Texas law—it is compensation not penalization. Proper damages equal the amount which represents the difference between the present value of the remaining rentals contracted for in the lease, and the reasonable cash market value of the lease for its unexpired term. Warncke v. Tarbutton, 449 S.W.2d 363,

364 (Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e.); Heller & Co. v. Allen, 412 S.W.2d 712, 720 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n.r.e.); White v. Watkins, 385 S.W.2d 267, 271 (Tex.Civ.App.—Waco 1964, no writ). Thus, if the present value of the remaining rentals is zero—or indeed if it is any figure less than the market value of the unexpired lease term—then plaintiff can be permitted no recovery, because it has not been damaged. Thus, the difference between us is not what the Texas law is but how it should have been applied to this case.

Ordinarily, the question is simply—did the lessor have such an advantageous contract with the lessee that he, the lessor, would get less for his premises if he relet them today, than when he first contracted with the lessee? If so, the breaching lessee must pay the old hornbook "difference between contract price and market price." In the normal situation, the jury's calculation will not be a difficult one. Step one, calculate the present value of the remaining rentals. Step two, determine what the lessee could get for its lease on the open market today. This must generally be only a prediction. By the very definition of anticipatory breach awards, that is all it can be—compensation today for damages that likely will accrue in a future period.

In a few cases the jury's function will be reduced even further: if the lessor for some reason can no longer perform his part of the contract and under the lease forfeits further rental payments, then the present value is zero. It is this type of case the majority has aptly designated an "impossibility of performance" case. I agree that the option to rebuild the premises in the event of their destruction in this lease, takes this case out of the "impossibility" category. But at this point our agreement ends. This case cannot be analogized to a claim of breach of a "duty to maintain" clause case wherein "the innocent party after repudiation is not required, in order to recover anticipatory damages, to perform his obligations under the con-

tract," or that it involves "only an obligation of the lessor which lessor was fully capable of performing at all times."

If this were apropos, I would agree that "(t)he lessor need not maintain the leased premises for the lessee under such circumstances." However, with deference, such an analysis mischaracterizes the case. The situation before us does not involve a question of maintaining premises, for there were no premises left to maintain. Nor does it involve an obligation of the lessor that we might think it futile to require it to perform in light of the lessee's breach, for the warehouse company has no obligation—it has an option to revive the lease. Here, there was a total destruction of the object of the contract, an event which if not rectified by the lessor, the parties have specifically provided will effect—not a suspension of the lease, not a penalty for failure to perform, not a right to sue for damages —but a complete termination of the contract.

Thus, though I agree it would be incorrect for us to find that plaintiff has not been damaged by the breach, on the theory that it would have been impossible for it to perform, I think we commit error by *conclusively presuming* it would have acted to revivify the agreement for the remaining term. For plaintiff-lessor was not facing a problem of merely maintaining the premises in good working order; in order to have demanded a single dollar of rent after the date of destruction, plaintiff would have faced the task of reconstructing the entire warehouse. I make no implication whatever that plaintiff would not have rebuilt. That is not a question for this appellate court. It is one for a trial jury. But it was the court—not the jury—that decided it in the case at bar.

The most important element of the jury's prediction in this case concerned the likelihood that a comparable warehouse needed to produce rental income during the unexpired term of the lease would be brought back into existence.

Without that initial assessment, no intelligent estimation of the present value of future rentals, or the reasonable cash market value of the unexpired term could possibly be made. That crucial consideration was omitted from the jury's deliberations. The charge instructed the jury to take for granted that the warehouse would be rebuilt, simply because lessor might opt to rebuild. Such a charge divides all cases of this genre into two groups: impossibility of performance and certainty of performance. I would refuse to invade the jury's province in such a fashion. They should make the prediction of fact.

I would affirm as to breach and acceptance but reverse the judgment and remand to the lower court for trial limited to the issue of damages. This would permit the parties to introduce evidence upon the likelihood that the warehouse would have been rebuilt. The jury then could consider such evidence in determining the amount, if any, by which plaintiff was damaged by the breach.